Ahren A. Tiller Esq. [SBN: 250608]
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone: (619) 894-8831
Facsimile: (866) 444-7026
Email: Ahren.Tiller@blc-sd.com

[Additional Counsel on Signature Page]

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY DELISLE and ROBERT DOUGHERTY, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SPEEDY CASH, <br><br> Defendant, | Case No.: 3:18-cv-02042-GPC-RBB <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS FILED BY DEFENDANT SPEEDY CASH** <br><br> Date:  January 18, 2019 <br> Time:  1:30pm <br> Ctrm:  2D <br><br> Honorable Gonzalo P. Curiel |

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES..................................................................................ii

I.  INTRODUCTION....................................................................................1

II. ARGUMENT...........................................................................................1

    A. CALIFORNIA LAW GOVERNS THE SUBJECT LOAN
        AGREEMENTS....................................................................................1

        1.  The Loan Agreements Expressly State That California
            Law Governs Them………………………………………….. 1
        2.  Even if This Court Were to Analyze a Choice of Law
            Argument, California Law Should Still Apply to These
            Loan Agreements……………………………………………..2

    B. CONTRARY TO SPEEDY CASH'S ASSERTIONS, *MCGILL*
        APPLIES TO PLAINTIFFS' CLAIMS AND THE
        ARBITRATION AGREEMENTS ARE ENTIRELY
        UNENFORCEABLE……......................................................................6

        1.  The Loan Agreements Are Procedurally and
            Substantively Unconscionable ……………..……………. 6
            a.   Procedural Unconscionability …………………. 7
            b.   Substantive Unconscionability ………….....….. 8
        2.  Plaintiff's FAC Seeks Public Injunctive Relief …………..… 9
        3.  The Parties' Loan Agreements Are Unenforceable Under
            California Law, Regardless of Whether Plaintiffs Properly
            Sought Public Injunctive Relief in Their First Amended
            Complaint Due to Para. 10's Poison Pill …………………. 12

    C. MCGILL IS NOT PRE-EMPTED BY THE FAA AND THIS
        COURT SHOULD FOLLOW IT…………………………………... 15

        1.  McGill Was Properly Decided and Not Preempted by
            the FAA................................................................................  15
        2.This Court Should Follow McGill...........................................17

III.    CONCLUSION................................................................. 19

i

1

# TABLE OF AUTHORITIES

2

## CASES

3

4
*Adkins v. Comcast Corp.,*
 2018 U.S. Dist. LEXIS 26066,(N.D. Cal. Feb. 15, 2018) ............................ 17

5
*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court,*
6
 46 Cal. 4th 993, 1000 (2009) ................................................................. 10

7
*American Express Co. v. Italian Colors Rest.,*
 570 U.S. 228 (2013) .............................................................................. 15

8
*AT&T Mobility, LLC v. Concepcion,*
9
 563 U.S. 333 (2011) ................................................................. 11, 15, 16

10
*Baltazar v. Forever 21, Inc.*
 62 Cal. 4th 1237 (2016)) .......................................................................... 7

11
*Blair v. Rent-A-Center, Inc.,*
12
 2017 U.S. Dist. LEXIS 163979, (N.D. Cal. Oct. 3, 2017) ...................... 17

13
*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
 622 F.3d 996(9th Cir. 2010) ........................................................ 2, 7, 15

14
*Doctor's Associates, Inc. v. Casarotto,*
15
 517 U.S. 681, 687, (1996) ...................................................................... 11

16
*Hemmings v. Tidyman's Inc.,*
 285 F.3d 1174 (9th Cir. 2002) ............................................................... 16

17
*Hoffman v. Citibank, N.A.,*
18
 546 F.3d 1078 (9th Cir. 2008) ................................................................. 3

19
*Kilgore v. KeyBank, Nat'l Ass'n,*
 718 F.3d 1052, 1061 (9th Cir. 2013) ........................................................ 9

20
*Laster v. AT&T Mobility LLC,*
21
 584 F.3d 849 (9th Cir. 2009) ................................................................... 7

22
*McArdle v. AT&T Mobility LLC,*
 2017 U.S. Dist. LEXIS 162751,(N.D. Cal. Oct. 2, 2017)) ...................... 16

23
*Mcgill v. Citibank, N.A.,*
24
 2 Cal. 5th 945 (2017) ...........................................................1, 8, 10, 12, 16

25
*Mitsubishi Motors v. Soler Chrysler-Plymouth,*
 473 U.S. 614, 628 (1985) ................................................................. 14, 15

26
*Mohamed v. Uber Techs., Inc.,*
27
 836 F.3d 1102 (9th Cir. 2016) ............................................................... 12

28
*Nagrampa v. MailCoups, Inc.,*
 469 F.3d 1257 (9th Cir. 2006) ............................................................... 17

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) ........................................................................3, 4

*Oestreicher v. Alienware Corp.*,
    322 F. App'x 489 (9th Cir. 2009)..............................................................6

*Peleg v. Neiman Marcus Grp., Inc.*,
    204 Cal. App. 4th 1425, 1446 (2012) .......................................................4

*Perry v. Thomas*,
    482 U.S. 483, 492-493, (1987) ...............................................................11

*Pinela v. Neiman Marcus Grp., Inc.*,
    238 Cal. App. 4th 227 (2015) ...............................................................2, 5

*Pokorny v. Quixtar, Inc*,
    601 F.3d 987 (9th Cir. 2010) ..................................................................2

*Prima Paint v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)..............................................................................12

*Roberts v. AT&T Mobility LLC*,
    2018 U.S. Dist. LEXIS 42235,(N.D. Cal. Mar. 14, 2018) ..........................16

*Saravia v. Dynamex, Inc.*,
    310 F.R.D. 412 (N.D. Cal. 2015)...............................................................4

*Shroyer v. New Cingular Wireless Servs.*,
    498 F.3d 976 (9th Cir. 2007) ...................................................................6

*Stirlen v. Supercuts, Inc.*,
    51 Cal. App. 4th 1519 (1997) ..................................................................7

*Wash. Mut. Bank v. Superior Court*,
    24 Cal. 4th 906 (2001) ............................................................................3

## **STATUTES**

Cal. Bus. Prof. Code § 17200 ..............................................................12, 16

Cal. Bus. Prof. Code §17203 ...................................................................10

Cal. Bus. Prof. Code §17204 ................................................................6, 10

9 U.S.C. § 2 ..........................................................................................1, 8

*Delisle v. Speedy Cash, et. al., - Opposition to Motion to Compel Arbitration*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION AND BRIEF PROCEDURAL HISTORY**

Defendant Speedy Cash's Motion to Compel Arbitration (ECF 18-1) should be denied in its entirety.  First, California law, not Kansas law, must be applied to the Parties' loan agreements. Second, under California law, the arbitration provision prohibiting Plaintiff from seeking "public injunctive relief" is unenforceable because it is contrary to California public policy.  This rule of California contract law is not preempted by the Federal Arbitration Act ("FAA"), pursuant to the FAA's savings clause found at 9 U.S.C. § 2, and *Mcgill v. Citibank, N.A.* 2 Cal. 5th 945 (2017). Therefore, by the Parties' Agreements' terms contained in Para. 10, the entire arbitration provision (i.e. Para. 5) is deemed null and void (See Ex. A - ECF No. 18-3, pp. 7, ¶ 10).  Lastly, the Parties' loan agreements are both procedurally and substantively unconscionable, and thus this Court should decline to enforce them.

The Complaint was filed on August 31, 2018 by Plaintiff Cindy Delisle. (ECF No. 1).  A First Amended Complaint ("FAC") was filed on October 16, 2018, adding the claims of Plaintiff Robert Dougherty. (ECF No. 16).  Speedy Cash filed the present motion on October 30, 2018, 2018. (ECF No. 18).

**II.**

**ARGUMENT**

**A.  CALIFORNIA LAW GOVERNS THE SUBJECT LOAN AGREEMENTS**

      1.    <u>The Loan Agreements Expressly State That California Law Governs Them</u>

In their Motion, Speedy Cash, through a lengthy analysis, argues that Kansas law should apply to the agreements.  Speedy Cash does so without once addressing that both agreements specifically contain provisions stating *that California law shall apply.* On Page 4 of both loan agreements, the Parties' agreements explicitly state that the agreement shall be "governed and construed in accordance with the laws of

California…" (See ECF No. 18-3 - Ex. A, pp. 5; & Ex. B pp. 5). For Speedy Cash to then claim under a choice of law analysis that Kansas law should be applied is at best disingenuous.

The only true purpose behind Speedy Cash's attempt to assert that Kansas law should be applied, is a transparent attempt to evade the statutory protections of California, by seeking to prevent any claims for public injunctive relief.  The Ninth Circuit Court of Appeals has ruled that where a choice of law analysis is primarily used as a tool to evade California statutory protections, it should not be followed. See *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010), holding that the selection of Texas choice of law made the arbitration agreement "primarily a tool that [the Defendant] may employ to evade California statutory protections…" and therefore was substantively unconscionable. See also, *Pinela v. Neiman Marcus Grp. Inc.,* 238 Cal. App. 4th 227, 246-47, (2015) ("When the weaker party to an adhesion contract can show the contract is unconscionable under California law, a contractual provision requiring the application of a different state's law to enforce the contract is itself unenforceable.")

Here, Speedy Cash drafted the loan agreements and included multiple provisions that are substantively unconscionable under California law.  Speedy Cash also explicitly selected California as the governing law in the subject loan agreements. Despite this, Speedy Cash now attempts to argue that Kansas law should be the governing choice of law with no reasonable basis to do so other than to deny Plaintiffs' their rights to bring California claims for public injunctive relief.  Thus, the choice of law argument by Speedy Cash is meritless, and this Court should apply California law to the subject loan agreements.

2.    Even If This Court Were to Analyze a Choice of Law Argument,
California Law Should Still Apply to These Loan Agreements

A district Court analyzes a choice of law question under the choice of law rules of the forum state. *Pokorny v. Quixtar, Inc.* 601 F.3d 987, 994 (9th Cir. 2010).

California's choice of law analysis is a two-step process.  First, a Court must determine if the state chosen in the agreement has a substantial relationship to the parties or their transaction, or whether there is any other reasonable basis for the choice of law.  Only if either of these tests are satisfied, does the Court then go to the second prong of the analysis, which is whether the chosen state's law is contrary to a fundamental policy of California. *Hoffman v. Citibank, N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008), citing to *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, (Cal. 1992).

In this case, the relevant facts are mostly undisputed.  On July 14, 2018, Plaintiff Cindy Delisle entered into an Installment Loan Promissory Note and Security Agreement with Speedy Cash (the "Delisle Agreement"), which provided that Speedy Cash would loan Ms. Delisle a principal amount of $4,457.38.  Further, on October 17, 2017, Plaintiff Robert Dougherty entered into an Installment Loan Promissory Note with Speedy Cash (the "Dougherty Agreement"), which provided that Speedy Cash would loan Mr. Dougherty a principal amount of $2,600.00 (ECF No. 18 - Speedy Cash's Motion to Compel ["Mot."] pp. 1, lns. 13-19).

Both the Delisle Agreement and the Dougherty Agreement were drafted by Speedy Cash, and provided to Plaintiffs on a "take it or leave it" basis.  The loan agreements Speedy Cash offers as exhibits are archetypical contracts of adhesion, and there is no reasonable dispute that Plaintiffs were the weaker parties to said agreements (ECF No. 18-3, Mot. Ex. A-D).  The California Supreme Court has ruled that the weaker party to a contract of adhesion can avoid enforcement of a choice-of-law provision if they establish that substantial injustice would result from its enforcement, or that superior power was unfairly used in imposing the contract. *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 918, (2001).

The California Supreme Court, in assessing the validity of a choice-of-law clause, has stated that the proper approach is:

… for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law.  If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue …." (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Nedlloyd Lines B.V. v. Superior Court,* 3 Cal. 4th 459, 466 (1992).

First, Speedy Cash has failed to demonstrate that Kansas has a substantial relationship to the parties in this matter and the conduct at issue, and has further failed to establish any reasonable basis for why Kansas law should apply beyond the mere fact that allegedly "… Speedy Cash maintains its headquarters and its principal place of business…" in Kansas (ECF No. 19 - Decl. Anthony, ¶ 12).  In their Motion, Speedy Cash offers only a brief pin citation to an employment law case titled: *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1446 (2012), wherein Defendant concludes that both of the *Nedlloyd* requirements above are met, without providing any analysis as to why or how said requirements are met, merely because Speedy Cash is allegedly headquartered in Kansas. (Mot. pp. 7, lns. 3-6).

Merely having a headquarters in a particular state is not enough to establish that the state's choice of laws should apply to the agreement, in particular where it is a consumer contract of adhesion. See *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 419 (N.D. Cal. 2015) ("California has a materially greater interest than Texas in adjudicating this dispute inasmuch as plaintiff is located in California, and the agreements at issue were executed and performed in California, while Texas's only

interest in the dispute arises out of the fact that one of the defendants is headquartered there.  Accordingly, California law governs Saravia's defenses to the enforcement of the arbitration provisions…"). See also *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 246-47 (2015) ("When the weaker party to an adhesion contract can show the contract is unconscionable under California law, a contractual provision requiring the application of a different state's law to enforce the contract is itself unenforceable.")

Here, both Plaintiffs currently reside in California, and both Plaintiffs resided in California when they entered the loan agreements at issue.  Speedy Cash entered into and funded the Delisle Agreement Loan at Speedy Cash's branch located at: 380 Broadway, Suite 103, El Cajon, California, and the Dougherty Agreement was entered into at: Speedy Cash's branch located at: 4915 Moreno Ave., Montclair, CA 91765 (See Ex. A & B - ECF No. 18-3, pp. 2 & 11).  All of the allegations in Plaintiff's FAC took place in California – not Kansas. (See FAC, ECF No. 16.)  The Plaintiffs entered into their loan agreements at two of Speedy Cash's many locations within California. (Declaration of Cindy Delisle ["Delisle Decl."], ¶ 3, and Declaration of Robert Dougherty ["Dougherty Decl."], ¶ 3, filed herewith; See also Ex. A & B – ECF No. 18-3, pp. 2 & 11).  Speedy Cash also heavily advertises in California. (Delisle Decl., ¶ 6).  A search of Speedy Cash's own publicly available website reflects that Speedy Cash has 36 separate locations in Southern California alone. Whereas, in Kansas, Speedy Cash has only 10 branches. (Delisle Decl., ¶ 7).  Further, Speedy Cash is incorporated in Nevada and/or Delaware[1] – not Kansas.  Therefore, Speedy Cash has not, and cannot, establish that Kansas has a substantial relationship to the parties or

---

[1] The sole evidentiary support submitted with Speedy Cash's Motion to Compel is a declaration of Katrina Anthony (ECF No. 19), along with Exhibits A-D attached.  In Anthony's Declaration, she states on Para. 2 that "… Speedy Cash is a Nevada corporation," yet contradicts herself in Paragraph 12 by stating, "Speedy Cash is a Delaware corporation."  Therefore, it is unclear as to what State Speedy Cash is actually incorporated in, however, what is clear is that they do not contend they are incorporated in Kansas.  (ECF No. 19, ¶¶ 2 & 12; FAC, ¶ 11).

their dispute, or whether there is any other reasonable basis for the Kansas choice of law provision to control.

Even assuming *arguendo*, that Speedy Cash could establish the first prong of the *Nedlloyd* analysis, their choice of Kansas law provision would still fail the second prong, because Kansas' law is contrary to a fundamental policy of California.  As outlined thoroughly below, the loan agreements contain provisions that are unenforceable under California law, as they eliminate any ability for Plaintiff to bring a Private Attorney General Action under Cal. Bus. Prof. Code §17204 (ECF No. 18-3, Ex. A & B, ¶ 5(D)).  If Kansas law were applied, however, then the provisions in the agreements would be enforced, rendering the entirety of California's public injunctive relief void.  Such a result cannot meet the second prong of the *Nedlloyd* analysis, as said provision impossibly conflicts with a fundamental policy of California. See *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 491 (9th Cir. 2009) (holding that California law applied to an arbitration agreement despite the Florida choice of law, because provisions in the agreement were contrary to California public policy).  The California legislature has made clear that the ability for an individual to pursue an action on behalf of the public as a private attorney general is paramount.  To apply Kansas law under these circumstances would strip all California consumers of this protection, undeniably creating an unresolvable conflict with a fundamental public policy of California, which is to protect the consumer public in California via allowing Private Attorney General Actions to be brought.

Consequently, under the *Nedlloyd* standard, California law must be applied to analyze the enforceability of the Parties' loan agreements.

**B.  CONTRARY TO SPEEDY CASH'S ASSERTIONS, *MCGILL* APPLIES TO PLAINTIFFS' CLAIMS AND THE ARBITRATION AGREEMENTS ARE THUS ENTIRELY UNENFORCEABLE**

    1.   The Loan Agreements Are Procedurally and Substantively Unconscionable

- 6 -

To be unconscionable under California law, an agreement must be both procedurally and substantively unconscionable. See *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981 (9th Cir. 2007). California courts apply a "sliding scale," so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Id.* at 981-982.

a. *Procedural Unconscionability*

Both California and Federal Courts have uniformly found that consumer contracts of adhesion are procedurally unconscionable. See *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 853 (9th Cir. 2009) ("Procedural unconscionability generally takes the form of a contract of adhesion, that is, a contract drafted by the party of superior bargaining strength and imposed on the other, without the opportunity to negotiate the terms.")

In this case, the loan agreements were provided to Plaintiffs on a take it or leave it basis, similar to most consumer loan agreements. (FAC, ¶¶ 24-25; Delisle Decl., ¶ 4; and Dougherty Decl. ¶ 4). Speedy Cash was the party with the only negotiating power (Speedy Cash does not contend otherwise), and the agreements are therefore classic examples of a contract of adhesion. (See ECF Nos. 18-3, Ex. A & B). A contract of adhesion is procedurally unconscionable when it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa v. MailCoups*, 469 F.3d 1257, 1281 (9th Cir. 2006); see also *Seasons Homeowners Ass'n v. Richmond Am. Homes of Nev., Inc.*, 2012 U.S. Dist. LEXIS 100859, *27 (D. Nev. July 19, 2012) ("An arbitration clause is procedurally unconscionable under Nevada law when a party lacks a meaningful opportunity to agree to the clause's terms either because of unequal bargaining power, as in an adhesion contract.")

Both loan agreements at issue are therefore procedurally unconscionable.

### b. *Substantive Unconscionability*

Substantive unconscionability analysis focuses on whether the agreement is so one-sided as to be objectively unreasonable. *Seasons Homeowners Ass'n*, 2012 U.S. Dist. LEXIS 100859 at \*27.  This is particularly the case where there is procedural unconscionability, and thus no ability of one party to bargain. See *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532, (1997) ("… a contract is largely an allocation of risks between the parties, and therefore a contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner."); see also *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244, (2016) ("The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as 'overly harsh,' 'unduly oppressive,' … or 'unfairly one-sided.'") (internal citations omitted).  Mandatory waivers of non-waivable statutory rights are "the sort of one-sided and overly-harsh terms that render an arbitration provision substantively unconscionable." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010).

Here, as outlined in depth below (and incorporated herein), the provisions in the Parties' loan agreements' arbitration provisions that deny Plaintiffs *any right* to Private Attorney General Actions (i.e. public injunctive relief) are the exact type of provisions that are substantively unconscionable under California law.  If the provisions barring public injunctive relief were to be enforced, Plaintiffs would be forced through a contract of adhesion to void statutory rights in any forum.  Such a result is indisputably substantively unconscionable.

Moreover, Speedy Cash *would have no interest* in seeking public injunctive relief with regard to the loan agreements, making that provision of the loan agreements illusory.  The *Stern* Court held, for example, that a class action waiver was "styled as a mutual prohibition on class actions, [but] the likelihood of defendants bringing a class action against their wireless customers [was] vanishingly small." *Stern v. Cingular Wireless Corp.*, 453 F. Supp. 2d 1138, 1148-49 (C.D. Cal. 2006).  Thus, the prohibition

on public injunctive relief here, essentially serves as an exculpatory clause, to the detriment of the California consumer public.

Therefore, the subject loan agreements are both procedurally and substantively unconscionable and should not be enforced pursuant to California law and the savings clause of the FAA. (9 U.S.C. § 2).

### 2.   Plaintiff's FAC Seeks Public Injunctive Relief

In their Motion, Defendant Speedy Cash argues that Plaintiffs do not actually seek public injunctive relief, and that as a result, the holding in *McGill* has no bearing on this case. (Mot., pp. 8, lns. 17-19).  Despite Plaintiffs' FAC explicitly containing claims for public injunctive relief (FAC, ¶¶ 1, 20, 48, 51, 55, 58, & Prayer for Relief), Defendant argues that these claims seek public injunctive relief in name only, and that in actuality they are truly *private* injunctive relief claims. (Mot., pp. 10, lns. 17-21).  In support of this claim, Speedy Cash argues that Plaintiffs' claims for public injunctive relief will in reality only provide relief to a *private* group of specific individuals - specifically people already allegedly harmed by Speedy Cash. (Mot. pp. 9, lns. 1-3). This argument, however, fails because it runs afoul of the relevant case law and summarily miscategorizes Plaintiffs' claims for relief in this action.

Defendant incorrectly characterizes Plaintiffs' claims for public injunctive relief as only requesting relief for *current and existing* consumers who have been harmed by Speedy Cash's unlawful practices. (Mot. pp. 10, lns. 1-3).  This is simply untrue and ignores the allegations and causes of action contained in Plaintiffs' FAC.  In this case, Plaintiffs' FAC specifically alleges that Speedy Cash engages in significant advertising to the public (FAC ¶¶ 16, 20), for the purpose of charging usurious and unlawful interest rates (FAC ¶¶ 14-17), that the typical consumer will be unaware of (FAC ¶ 21). Indeed, the very first allegation in the FAC indicates that Plaintiffs bring this action "for public injunctive relief to protect the consuming public in California, including potential customers of Speedy Cash, from the threat of future injury in terms of an excessive interest rate…." (FAC ¶ 1).  Plaintiffs' FAC also explains that these practices

are *ongoing* and that *without public injunctive relief, they will not cease*. (FAC ¶ 47). Plaintiffs' prayer for relief specifically requests an injunction through the role as a Private Attorney General, which would prohibit Speedy Cash from continuing to engage in the unlawful acts alleged in the FAC. (FAC ¶ 14).

Speedy Cash asserts without basis that Plaintiffs' claims would only benefit customers who have already obtained a loan from Speedy Cash. (Mot. pp. 10, lns. 1-3). This conclusion, however, is incorrect. Essentially, Speedy Cash is arguing that if any entity were to engage in offering an unlawful service or product, no consumer could ever act as a private attorney general, because once they purchased the product or service, they are transformed into a discrete, inward-facing group, and no longer can seek redress on behalf of the public. A similar position to that which is taken by Speedy Cash, but in the context of false advertising of consumer products, was rejected in *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115-1116 (9th Cir. 2017), where the Ninth Circuit Court of Appeal explained, "[w]ere injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, California's consumer protection laws would be effectively gutted, as defendants could remove any such case."

Notably, in Speedy Cash's lengthy analysis comparing Plaintiffs' alleged claims to those in other decisions where Courts have analyzed whether the plaintiffs were truly seeking public injunctive relief, not once does Speedy Cash address the allegation in Plaintiff's FAC that Speedy Cash's unlawful practices are ongoing. Nor does Speedy Cash address any of Plaintiffs' allegations or claims for relief beyond Plaintiffs' definition of its class members (i.e., parties who by definition must have already suffered harm from Defendants to have standing). The distinction between redressing past wrongs and stopping an ongoing future harm is the key distinction between plaintiffs who are truly seeking public injunctive relief and those who are not. See *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1061 (9th Cir. 2013), which stated:

The central premise of *Broughton-Cruz* is that 'the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy, which as a consequence will likely lead to the diminution or frustration of the public benefit if the remedy is entrusted to arbitrators.' *Broughton*, 988 P.2d at 78. That concern is absent here, where Defendants' alleged statutory violations have, by Plaintiffs' own admission, already ceased, where the class affected by the alleged practices is small, and where there is no real prospective benefit to the public at large from the relief sought.

See also, *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 958, (2017), which stated:

As detailed before, McGill alleges in her complaint that the conduct is ongoing. At this stage of the proceeding—a motion to compel arbitration—it is premature to consider whether she "has … established" these allegations with proof or how her failure to do so would ultimately affect her request for injunctive relief. (See *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 133 [87 Cal. Rptr. 2d 132, 980 P.2d 846] (plur. opn. of George, C. J.) ["The mere fact that a defendant refrains from unlawful conduct during the pendency of a lawsuit does not necessarily preclude the trial court from issuing injunctive relief to prevent a posttrial continuation of the unlawful conduct."]; *Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 315 [209 Cal. Rptr. 3d 81] ["[T]here is no hard-and-fast rule that a party's discontinuance of illegal behavior makes injunctive relief … unavailable. 'While voluntary cessation of conduct may be a factor in a court's exercise of its equitable jurisdiction to issue an injunction, it is not determinative.'"].)

Here, Speedy Cash continues to advertise and offer loans to California Consumers in excess of $2,500.00, wherein the annual percentage rate (APR) of interest on said loans exceeded 90 percent. (See Decl. Delisle ¶ 8 & Ex. 1). In this case, Plaintiffs have alleged a clear and comprehensive unlawful business practice that is ongoing and harmful to the California consumer public, which Speedy Cash is both advertising and providing to the public at large in California. Speedy Cash's claim that the requested relief in Plaintiffs' FAC is "private" not "public" injunctive relief, merely because the Plaintiffs and Class definition are its customers, is a logical fallacy. Such

a conclusion would eliminate all claims for Public Injunctive relief under any legal theory – as *an actual financial injury is required* to have standing to bring a Private Attorney General Action. See *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 1000 (2009) ("The law now requires that a representative claim, that is, a claim seeking relief on behalf of others [id., § 17203], may be brought only by a 'person who has suffered injury in fact and has lost money or property as a result of the unfair competition' [id., § 17204]").

Therefore, Plaintiffs here have properly brought, and intend to pursue, claims for public injunctive relief, as the unlawful acts alleged in the FAC are ongoing.  In this case, Plaintiffs seek to protect the public, as any member of the public could become Speedy Cash's next "customer" and be harmed by their 90%+ interest rates unless Plaintiffs prevail on their request for public injunctive relief.

3.     <u>The Parties' Loan Agreements Are Unenforceable Under California Law, Regardless of Whether Plaintiffs Properly Seek Public Injunctive Relief in Their First Amended Complaint Due to Paragraph 10's "Poison Pill"</u>

Even assuming arguendo, that this Court were to conclude that Plaintiffs were merely seeking private injunctive relief, that point is moot.  Under all applicable case law, the arbitration *entire agreement* is unenforceable regardless of what claims Plaintiffs have put forward.

The U.S. Supreme Court has stated that the FAA places arbitration agreements on "an equal footing with other contracts," and requires Courts to enforce them according to their terms.  However, the Supreme Court has also repeatedly outlined that the savings clause of the FAA mandates that arbitration agreements are able to be declared unenforceable, "…upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  The savings clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the

1   fact that an agreement to arbitrate is at issue. *Id.,* citing to *Doctor's Associates, Inc. v.*

2   *Casarotto*, 517 U.S. 681, 687, (1996), and *Perry v. Thomas*, 482 U.S. 483, 492-493,

3   (1987).

4         Courts place arbitration agreements on equal footing with other contracts, but it

5   does not require arbitration agreements to be on *higher* ground.  In this case, paragraph

6   5(D) of the Parties' loan agreements deny Plaintiffs the right to pursue a Private

7   Attorney General Action in any forum.  Said provision is a deficient term under "a

8   generally applicable contract defense," which is grounds for revoking any contract

9   under California law.  As the California Supreme Court stated, "a provision in any

10  contract — even a contract that has no arbitration provision — that purports to waive,

11  in all forums, the statutory right to seek public injunctive relief under [§ 17200 or] the

12  CLRA . . . is invalid and unenforceable under California law." *McGill*, Supra at 961-

13  962. See also *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)

14  (holding that the FAA makes arbitration agreements "as enforceable as other contracts,

15  but not more so.").

16        The Ninth Circuit Court of Appeals has also upheld the rationale behind *McGill*

17  in invalidating provisions in arbitration agreements that seek to entirely remove a

18  statutory right as opposed to procedurally limit them, but still allow pursuit of the claim.

19  See *Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102 (9th Cir. 2016) (holding that an

20  arbitration agreement provision disallowing Private Attorneys General Act [PAGA]

21  claims was unenforceable under California law, and said application of California law

22  within that context was not pre-empted by the FAA).

23        In this case, the *entire loan agreement* is unenforceable under California law,

24  regardless of what claims Plaintiffs were to bring, because Speedy Cash's loan

25  agreement contains a "poison pill."  As discussed above, under *McGill,* any arbitration

26  agreement provision that seeks to invalidate a party's right to public injunctive relief is

27  unenforceable under California contract law.  Here, Speedy Cash quotes large sections

28

of the arbitration agreement's provisions in their Motion, but conspicuously omits paragraph 10, which states as follows:

> 10. SURVIVAL, SEVERABILITY, PRIMACY.   This Arbitration Provision shall survive the full payment of any amounts due under this Agreement; any rescission or cancellation of this Agreement; any exercise of a self-help remedy; our sale or transfer of this Agreement or our rights under this Agreement; any legal proceeding by us to collect a debt owed by you; and your (or our) bankruptcy.  If any part of this Arbitration Provision cannot be enforced, the rest of this Arbitration Provision will continue to apply; provided, **however that if Section 5(C), (D) and/or (E) is declared invalid in a proceeding between you and us, without in any way impairing the right to appeal such decision, this entire Arbitration Provision (other than this sentence) shall be null and void in such proceeding**.  In the event of any conflict or inconsistency between this Arbitration Provision and the administrator's rules or the rest of this Agreement, this Arbitration Provision will govern.

(See ECF No. 18-3 - Ex. A, ¶10 & Ex. B ¶10 [Emphasis added]).

Section 5(D) of the arbitration provisions in the Parties' loan agreements bar Plaintiffs from acting as private attorney generals in either court or in arbitration (i.e., in any forum) (ECF No. 18-3 - Ex. A, ¶5(D) & Ex. B, ¶5(D)).  Here, Speedy Cash drafted the terms of the arbitration agreement.  There was no negotiation as explained above.  The subject loan agreements mandate that *if paragraph 5(D) of the loan agreements arbitration provision, which bars public injunctive relief in any forum is declared invalid,* **then the entire arbitration provision is null in void.**  Therefore, by the loan agreements' own terms, the entire arbitration provision shall de null and void, regardless of whether Plaintiffs exerted proper claims for public injunctive relief in their FAC.

The California Supreme Court (i.e. the final authority on interpreting California Contract Law), has essentially ruled that Para. 5(D) of the Parties' Loan Agreements is unconscionable, and therefore invalid under California contract law.  As Para. 5(D) is invalid, there is no need to analyze the merits of Plaintiffs' PAGA claims at the

pleading stage, since the mere fact that the loan agreements deny the right to seek PAGA relief in any forum, said term's invalidity triggers the poison pill language of Para. 10, which by the contact's own terms states that the "…entire Arbitration Provision (other than this sentence) shall be null and void in such proceeding." (ECF No. 18-3 – Ex. A & B, ¶ 10).

To illustrate this point via an extreme example, the loan agreements' paragraphs 5(D) and 10, when read in conjunction are akin to a contract that provides that one party can chop off the other's hand, and then contains a poison pill stating that if the provision for chopping off a hand is deemed invalid, the entire agreement is invalid. The hand would not have to be actually chopped off for the entire agreement to be deemed invalid, as nothing in the Para. 10's "poison pill" requires for a PAGA claim to be properly pled in Plaintiffs' FAC - yet merely that the provision be deemed invalid. Speedy Cash could have easily drafted an agreement that had no poison pill language in its severability clause, yet they elected to include one.  By virtue of Speedy Cash's own contractual verbiage, the entire arbitration agreement should be deemed null and void, regardless of what claims Plaintiffs bring against Speedy Cash.

## C.  MCGILL IS NOT PRE-EMPTED BY THE FAA AND THIS COURT SHOULD FOLLOW IT

### 1.  *McGill* Was Properly Decided and Not Preempted by the FAA

In their Motion, Speedy Cash argues that the California Supreme Court's decision in *McGill* is pre-empted by the FAA. (Mot., pp. 13, ll. 28).  Their arguments for pre-emption essentially claim that: (1) *McGill's* holding that any contract that prohibits public injunctive relief in any forum is essentially the same as an arbitration provision which bars class actions (Mot., pp. 17, ll. 20-22); and (2) that the Court in *McGill* made up the distinction between procedural laws and substantive statutory remedies, and that under *Concepcion*, such a distinction is immaterial if it frustrates an arbitration agreement. (Mot., pp. 21-22).  These two arguments both fail because they

contain false equivalences, and either misunderstand, or artfully misstate the holding of *McGill*.

The *McGill* Court itself disposed of both of Speedy Cash's aforementioned arguments made here in its lengthy and well-reasoned opinion. As *McGill* explains, the prohibition of class actions in an arbitration agreement only prohibits a *vehicle* for exerting a right, yet it does not waive a right to redress a specific harm through a statutory grant of public authority. As the Court in *McGill* pointed out (and contrary to Speedy Cash's assertions), the United States Supreme Court *has* made such a distinction and has repeatedly held it to be a valid reason for declaring an arbitration agreement invalid. See e.g., *Mitsubishi Motors v. Soler Chrysler-Plymouth* 473 U.S. 614, 628 (1985) ("[ b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum."); See also *American Express Co. v. Italian Colors Restaurant* 570 U.S. 228, 236 (2013) (holding that the FAA would not protect an arbitration agreement that "forbid[s] the assertion of certain statutory rights" or that "eliminates … [the] right to pursue [a] statutory remedy."); and *Mitsubishi Motors Corp.*, Supra at 637 ("[I]n the event the [arbitration] and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."); See also *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, Supra at 1004 (holding that mandatory waivers of non-waivable statutory rights are "the sort of one-sided and overly-harsh terms that render an arbitration provision substantively unconscionable.")

There is no reasonable dispute that the savings clause contained in the FAA allows for an arbitration agreement to be invalidated on state law grounds *so long as the reason for invalidation is not discriminatory against arbitration.* Nothing about *McGill* claims that *only arbitration agreements* that bar public injunctive relief are invalid. It simply reiterates that under California law, any provision in a contract

1  (arbitration agreement or otherwise) that bars an individual's right to seek public

2  injunctive relief in any forum is void, as it runs contrary to California public policy.  In

3  *Concepcion*, the U.S. Supreme Court did not invalidate any right for the Plaintiffs to

4  bring their claims, yet merely stated they were not entitled to do so through the

5  procedural mechanism of a class action where an arbitration agreement foreclosed it.

6  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

7       Here, Speedy Cash was free to draft their arbitration agreement to provide for

8  the arbitration of claims for public injunctive relief, or to allow solely for public

9  injunctive relief claims *not* to be subject to arbitration.  In either scenario, the subject

10 loan agreements would not have run afoul of California contract law – as in either

11 scenario the agreements would not foreclose Plaintiffs' right to bring a PAGA claim *in*

12 *any forum*.  Instead, here, Speedy Cash elected to bar Plaintiffs from bringing PAGA

13 claims in any forum, and added a "poison pill" provision that invalided the entire

14 arbitration provision of the agreement, if said PAGA prohibition term was deemed

15 invalid.  As a result, the arbitration provision of the Parties' loan agreements should be

16 deemed invalid under the FAA savings clause and the loan agreements' own terms, as

17 nothing in *Concepcion* supports a different conclusion than the one the California

18 Supreme Court arrived at in *McGill*.

19       2.    This Court Should Follow *McGill*

20       *McGill* is binding on this Court as to its interpretation of California law. See

21 *McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW, 2017 U.S. Dist. LEXIS

22 162751, at *7-8 (N.D. Cal. Oct. 2, 2017) ("*McGill's* holding that predispute waivers of

23 public injunctive relief are contrary to California public policy is binding on this

24 Court."; citing to *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002)

25 ("In interpreting state law, federal courts are bound by the pronouncements of the state's

26 highest court.")  Additionally, the Ninth Circuit Court of Appeals has also upheld the

27 rationale behind *McGill* in invalidating provisions in arbitration agreements that seek

28 to entirely remove a statutory right as opposed to procedurally limit them, but still allow

1   the claim. See *Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102 (9th Cir. 2016) (holding

2   that an arbitration agreement provision disallowing PAGA claims was unenforceable

3   under California law and that application of California law in that context was not pre-

4   empted by the FAA).

5        Further, since the publication of *McGill*, the vast majority of district courts in

6   this Circuit to consider the applicability of *McGill* have followed its reasoning, finding

7   provisions in arbitration agreements that prohibit public injunctive relief to be

8   unenforceable. See *Roberts v. AT&T Mobility LLC*, No. 15-cv-03418-EMC, 2018 U.S.

9   Dist. LEXIS 42235, at *17 (N.D. Cal. Mar. 14, 2018) ("The Court agrees with Judge

10  Wilken's preemption analysis in *McArdle* and accordingly holds that the Ninth Circuit's

11  reasoning in *Sakkab* is applicable to the instant case.  If the California state law rule

12  [*Iskanian*] prohibiting waiver of representative PAGA claims [in any forum] does not

13  interfere with the fundamental attributes of arbitration, then it is difficult to see how

14  the California state law rule [*McGill*] prohibiting waiver of public injunctive relief [in

15  any forum] could."); see also *Adkins v. Comcast Corp.*, No. 16-cv-05969-VC, 2018

16  U.S. Dist. LEXIS 26066, at *2-3 (N.D. Cal. Feb. 15, 2018) ("The arbitration agreement

17  in this case waives an individual's right to bring a public injunctive relief claim in any

18  forum … Such a waiver is unenforceable under state law … to the extent that Comcast

19  argues the *McGill* rule is preempted by the Federal Arbitration Act, *McGill* itself

20  explains why it is not."); see also, *Blair v. Rent-A-Center, Inc.*, No. C 17-02335 WHA,

21  2017 U.S. Dist. LEXIS 163979, at *11-12 (N.D. Cal. Oct. 3, 2017) (holding expressly

22  that *McGill* is not pre-empted by the FAA, nor does it run afoul of *Concepcion* in its

23  ruling denying a Motion to Compel arbitration as to claims under Cal. Bus. Prof. Code

24  § 17200).  Additionally, the Ninth Circuit Court of Appeals has previously supported

25  the underlying rationale behind *McGill*.  See *Nagrampa v. MailCoups, Inc.*, 469 F.3d

26  1257, 1292 (9th Cir. 2006) ("Under California law, a right or cause of action created

27  for a public purpose cannot, by private agreement, be waived, contravened, burdened,

28  or subjected to procedural shortcomings that would preclude its vindication.").

Therefore, Speedy Cash's arguments to the contrary are all without merit.  The holding in *McGill* is not only correct, it is also the law of the land and binding on this Court with regards to the specific question of whether the arbitration agreements are invalid under California contract law, which is not preempted by the FAA due to the Savings Clause (2 U.S.C. § 9).

## III.
## CONCLUSION

In conclusion, California law governs the loan agreements in this matter. California law is the expressly stated choice of law in the agreements, and further, the choice of law analysis clearly supports that California law - not Kansas law should be applied here.  Despite Speedy Cash's conclusory assertions to the contrary, Plaintiffs have properly pled their claims for public injunctive relief, as those claims do not merely benefit a private group of individuals, yet prevent future harm to the public as a whole, since Defendant's conduct is ongoing.  Moreover, the entire arbitration agreement is unenforceable by its own terms, due to Paragraph 5(D)'s PAGA prohibition being invalid, combined with the agreements' own Paragraph 10's poison pill verbiage, which thereby rendered the entire arbitruation provision in the agreements null and void.  Lastly, the reasoning in McGill is legally sound and wholly applicable to this case.  Therefore, for the foregoing reasons, the arbitration agreements are unenforceable, and thus Plaintiffs respectfully request this Court deny Speedy Cash's motion to compel arbitration in its entirety.

Dated: January 4th, 2019              Respectfully submitted,


                                                **BLC LAW CENTER, APC**

                                                By:_/s/ Ahren Tiller_____

                                                      Ahren A. Tiller, Esq.
                                                      Attorneys for Plaintiffs

1

**Additional Counsel for Plaintiffs:**

2

3  **KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
4  ak@kazlg.com
5  Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
6  245 Fischer Avenue, Suite D1
7  Costa Mesa, California 92626
Telephone:   (800) 400-6808
8  Facsimile:    (800) 520-5523

9
**HYDE & SWIGART**
10  Joshua B. Swigart, Esq. (SBN: 225557)
11  josh@westcoastlitigation.com
Yana A. Hart, Esq. (SBN: 306499)
12  yana@westcoastlitigation.com
13  2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
14  Telephone: (619) 233-7770
15  Facsimile: (619) 297-1022

16

17

18

19

20

21

22

23

24

25

26

27

28