PAUL L. GALE, Bar No. 065873
paul.gale@troutman.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

JAMES B. MANLEY, JR., *Admitted Pro Hac Vice*
jim.manley@troutman.com
LINDSEY B. MANN, *Admitted Pro Hac Vice*
lindsey.mann@troutman.com
W. ALEX SMITH, *Admitted Pro Hac Vice*
alex.smith@troutman.com
TROUTMAN SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Telephone: 404.885.3000

Attorneys for Defendant
SPEEDY CASH

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CINDY DELISLE and ROBERT DOUGHERTY, Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

SPEEDY CASH,

Defendant.

Case No. 3:18-cv-02042-GPC-RBB

Honorable Gonzalo P. Curiel

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

Date: January 18, 2019
Time: 1:30 p.m.
Place: Courtroom 2D

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Kansas Law Governs the Validity of the Arbitration Provision .......... 1

B. The Arbitration Provision Is Not Unconscionable .......... 3

1. No Procedural Unconscionability Exists .......... 4

2. No Substantive Unconscionability Exists .......... 5

C. *McGill* Has No Bearing on the Arbitrability of Plaintiffs' Claims .......... 6

1. Plaintiffs Seek Only Private Injunctive Relief .......... 6

2. *McGill* Is Preempted by the FAA .......... 8

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Superior Court*,
66 Cal. App. 4th 1199 (1998) .......... 5

*American Express v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 9

*AT&T Mobility v. Concepcion*,
563 U.S. 333 (2011) .......... 6, 8, 9, 10

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010) .......... 3

*Circuit City Stores v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .......... 4

*Coneff v. AT&T Corp.*,
673 F.3d 1155 (9th Cir. 2012) .......... 8, 9

*Dagnan v. St. John's Military Sch.*,
2016 U.S. Dist. LEXIS 177303 (D. Kan. Dec. 21, 2016) .......... 5

*Davidson v. Kimberly-Clark Corp.*,
873 F.3d 1103 (9th Cir. 2017) .......... 7

*Ed Bozarth Chevrolet, Inc. v. Black*,
32 Kan. App. 2d 874 (2003) .......... 5

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .......... 6

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) .......... 9

*Flores v. Transamerica HomeFirst, Inc.*,
93 Cal. App. 4th 846 (2001) .......... 4, 5

*Johnson v. JP Morgan Chase Bank, N.A.*,
2018 U.S. Dist. LEXIS 167272 (C.D. Cal. Sept. 18, 2018) .......... 7, 8

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*McArdle v. AT&T Mobility LLC*,
No. 17-17246 (9th Cir.) ........ 9

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ........ *passim*

*Mendes v. FedEx Ground Package Sys.*,
2015 U.S. Dist. 5090 (N.D. Cal. Jan. 15, 2015) ........ 3

*Mitsubishi Motors v. Soler Chrysler-Plymouth*,
473 U.S. 614 (1985) ........ 9

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ........ 4

*Morris v. Redwood*,
128 Cal. App. 4th 1305 (2005) ........ 4

*Peleg v. Neiman Marcus Grp., Inc.*,
204 Cal. App. 4th 1425 (2012) ........ 2

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ........ 3, 4, 5

*Roman v. Chase*,
2011 U.S. Dist. LEXIS 41877 (D. Nev. Apr. 8, 2011) ........ 3

*Sakkab v. Luxottica Retail N. Am., Inc.*,
803 F.3d 425 (9th Cir. 2015) ........ 10

*San Pasqual Band of Mission Indians v. State of Cal.*,
241 Cal. App. 4th 746 (2015) ........ 2

*Saravia v. Dynamex, Inc.*,
310 F.R.D. 412 (N.D. Cal. 2015) ........ 3

*Vasquez v. Libre by Nexus, Inc.*,
2018 U.S. Dist. LEXIS 214143 (N.D. Cal. Aug. 20, 2018) ........ 7

*Wash. Mut. Bank v. Superior Court*,
24 Cal. 4th 906 (2001) ........ 2

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Zalkind v. Ceradyne, Inc.*,
194 Cal. App. 4th 1010 (2011) ........................................................ 2

**Other Authorities**

Restatement (Second) of Conflict of Laws, § 187 cmt. ........................................ 2

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- iv -
DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS 3:18-CV-02042-GPC-RBB

## I. INTRODUCTION

Plaintiffs' opposition can be distilled to one common theme: the repeated effort to avoid the plain language of the Arbitration Provision. Plaintiffs attempt to do this by relying on California law governing adhesion contracts and then claiming broadly that they had no meaningful choice in accepting the Arbitration Provision's terms. In so doing, Plaintiffs ignore that they freely chose to execute the contract and freely chose not to exercise their unilateral right to reject the Arbitration Provision within 30 days after signing, a right which Plaintiffs could have exercised without prejudicing or otherwise altering their rights under the Agreement.

Despite having voluntarily agreed to waive certain rights, including the right to pursue a claim for public injunctive relief, Plaintiffs ask this Court to relieve Plaintiffs from their contract and strike down the Arbitration Provision under *McGill*. *McGill* has no bearing here. Plaintiffs do not seek the public injunctive relief ostensibly protected by *McGill.* The only individuals who theoretically would benefit from the relief Plaintiffs request are a discrete group of individuals who contract with Speedy Cash for loans with certain interest rates. Even so, *McGill* runs afoul of the objectives of the FAA protecting bilateral arbitration and is preempted. This Court should enforce the Arbitration Provision and order Plaintiffs to arbitrate their claims individually.

## II. ARGUMENT

### A. Kansas Law Governs the Validity of the Arbitration Provision

Plaintiffs attempt to erect several barriers to avoid the Arbitration Provision's Kansas choice of law provision. All are unavailing.

First, Plaintiffs rely on the wrong choice of law provision. Section 9 of the Arbitration Provision expressly provides that "the law of Kansas, where we [Speedy Cash] are headquartered, shall be applicable to the extent that any state law is relevant in determining the enforceability of this Arbitration Provision." (Dkt. 18-2, Exs. A and B at § 9.) The choice of law clause on which Plaintiffs rely

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

applies exclusively to the *remainder* of the Agreement, and any reading of that clause as trumping the Arbitration Provision's Kansas choice of law provision would render the latter a nullity. *See Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1027 (2011) ("[T]he meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, in order to give effect to all provisions and to avoid rendering some meaningless."). And even if the provisions could be read as conflicting with one another, the Arbitration Provision states that "[i]n the event of any conflict or inconsistency between this Arbitration Provision and . . . the rest of this Agreement, this Arbitration Provision will govern." Dkt. 18-2, Exs. A and B at § 10; *see also San Pasqual Band of Mission Indians v. State of Cal.*, 241 Cal. App. 4th 746, 761 (2015) ("Specific terms of a contract govern inconsistent, more general terms.").

Second, the Arbitration Provision's Kansas choice of law provision satisfies California's choice of law analysis.[1] Contrary to Plaintiffs' assertion, Kansas has a substantial relationship to the parties and lawsuit because Speedy Cash maintains its headquarters and principal place of business in Kansas. Courts regularly hold that the presence of a defendant in the state underlying the choice of law provision is itself sufficient to satisfy the substantial relationship or reasonable basis test. *See, e.g.*, *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1446 (2012) ("[D]efendant . . . has its principal place of business, corporate headquarters, and operating center in Dallas, Texas. That is a sufficient relationship or basis to justify the Texas choice-of-law clause."); Restatement (Second) of Conflict of Laws, § 187 cmt. f (state has substantial relationship to parties or contract "where one of the

[1] Plaintiffs attempt to avoid the Kansas choice of law provision by claiming the Arbitration Provision constitutes an adhesion contract. But even if the Arbitration Provision did constitute an adhesion contract (which it does not, given Plaintiffs' unfettered right to reject the Arbitration Provision, *see infra* Part II.B.1), courts must apply the same choice of law analysis to an adhesion contract. *See Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 917 (2001) ("California, we observe, has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate.").

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

parties is domiciled or has his principal place of business").

Because Kansas bears a substantial relationship to the parties, "[t]he burden therefore shifts to plaintiffs to show that applying [Kansas] law would be contrary to a fundamental California policy, and that California has a materially greater interest at stake than does [Kansas]." *Mendes v. FedEx Ground Package Sys.*, 2015 U.S. Dist. 5090, at *8 (N.D. Cal. Jan. 15, 2015). Plaintiffs have failed to satisfy their burden. For the reasons discussed in Speedy Cash's initial brief and below, Kansas law is not contrary to fundamental California policy. *McGill* does not apply, and the Arbitration Provision is not unconscionable under California law. [2]

In sum, the Arbitration Provision constitutes a valid agreement under Kansas law. Plaintiffs do not contend otherwise. Rather, Plaintiffs rely exclusively on California law to dispute the enforceability of the Arbitration Provision. Plaintiffs' discussion of California law is immaterial; the Arbitration Provision is valid whether Kansas or California law is applied. Accordingly, the Court should enforce the valid agreement to arbitrate.

**B. The Arbitration Provision Is Not Unconscionable**

Plaintiffs bear the burden of proving both procedural and substantive unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012). In an unconscionability challenge, "[o]nly allegations that go specifically to the execution of an arbitration clause may be considered by a court." *Roman v. Chase*, 2011 U.S. Dist. LEXIS 41877, at *5

[2] Plaintiffs improperly conflate the third prong of the analysis—whether California has a materially greater interest than Kansas—with the substantial relationship test. The materially greater interest inquiry is not pertinent unless and until the Court first concludes that the law of Kansas is contrary to a fundamental policy of California. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) ("If the court finds such a conflict, it must then determine whether California has a materially great interest . . . ." (citation omitted)). Plaintiffs' cited authority confirms this fact. *See Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 419 (N.D. Cal. 2015) (assessing greater interest after first concluding that Texas has a substantial relationship to the parties because the defendant is headquartered there and Texas law conflicts with fundamental California law).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

(D. Nev. Apr. 8, 2011). Plaintiffs have failed to show that either exists.

**1. No Procedural Unconscionability Exists**

Under California law, "procedural unconscionability requires oppression or surprise. 'Oppression occurs where a contract involves a lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form.'" *Pinnacle Museum*, 55 Cal. 4th at 247 (quoting *Morris v. Redwood*, 128 Cal. App. 4th 1305, 1317 (2005)). Plaintiffs have set forth no evidence demonstrating oppression or surprise.

Despite Plaintiffs' cursory allegations to the contrary, the Arbitration Provision was not presented on a take-it-or-leave basis. Not only were Plaintiffs afforded the opportunity to review the terms before signing the Agreement, but for 30 days thereafter, they had the unfettered right to *reject* the Arbitration Provision in its entirety.[3] Section 1 of the Arbitration Provision, titled in bold and in all capital letters "**RIGHT TO REJECT ARBITRATION**," provided Plaintiffs with the right to reject the Arbitration Provision within 30 days. (Dkt. 18-2, Exs. A and B at § 1.) Rejection of that provision would "not affect your right to Services or the terms of the Agreement (other than this Arbitration Provision)." (*Id.*)

As discussed in Speedy Cash's initial brief, Ninth Circuit precedent holds that an arbitration agreement is not adhesive, and not procedurally unconscionable, where a party is afforded the right to opt out. (Dkt. 18-1 at 23-24 n.8 (citing *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002).) Oppression exists only where there is "no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). Plaintiffs do not argue that the right to reject was unclear or otherwise unavailing. Rather, they

[3] The Agreement also provides Plaintiffs with the opportunity to cancel the Agreement without paying any finance charge if, after the close of the next business day, Plaintiffs are unsatisfied with the terms. (Dkt. 18-2, Exs. A and B at 2.)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

simply ignore the provision and controlling law. The unrestricted right to reject presented Plaintiffs with a meaningful choice as to arbitration.[4]

Nor does any evidence of surprise exist. The Arbitration Provision appears in a separate article under a bold, capitalized, and underlined caption titled "**ARBITRATION PROVISION**" and states in bold and capitalized that the Provision is "**VERY IMPORTANT. READ THIS ARBITRATION PROVISION CAREFULLY. IT SETS FORTH WHEN AND HOW CLAIMS . . . WILL BE ARBITRATED INSTEAD OF LITIGATED IN COURT.**" (Dkt. 18-2, Exs. A and B at 5, 6.) The Arbitration Provision provides a detailed discussion of the election of arbitration, and the clause describing the waivers of the right to pursue certain claims, a class action, a jury trial, and an appeal are contained in a separate section and capitalized. (*Id.*) The California Supreme Court has held that no evidence of surprise exists under almost identical circumstances. *See Pinnacle Museum*, 55 Cal. 4th at 247 n.12.

**2. No Substantive Unconscionability Exists**

Plaintiffs also have failed to prove that the Arbitration Provision is substantively unconscionable. "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to shock the conscience.'" *Pinnacle Museum*, 55 Cal. 4th at 246 (quoting *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1213 (1998)).

In support of their argument, Plaintiffs rely wholesale on *McGill*. Plaintiffs do not challenge the assessment of costs or fees or any other aspect of the arbitral

---

[4] The Arbitration Provision similarly does not constitute an adhesion contract under Kansas law. *See Ed Bozarth Chevrolet, Inc. v. Black*, 32 Kan. App. 2d 874, 886 (2003) (adhesion contract defined as standardized contract in which consumer cannot obtain product or service except by acquiescing in form contract). And even if the Arbitration Provision could be construed as an adhesion contract, such contracts are not per se unconscionable under Kansas law. (Dkt. 18-1 at 23 n.8.) Plaintiffs similarly fail to prove that the clause "is so outrageous and unfair in its wording or its allocation that it shocks the conscience" and is the product of "deceptive bargaining conduct." *Dagnan v. St. John's Military Sch.*, 2016 U.S. Dist. LEXIS 177303, at *15 (D. Kan. Dec. 21, 2016).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

process detailed by the Arbitration Provision. Nor could they. Such provisions indisputably are equitable. Nevertheless, Plaintiffs' claim that the Arbitration Provision is substantively unconscionable, because it waives the right to pursue public injunctive relief. As discussed below, California law governing the waiver of claims for public injunctive relief is inapposite.[5]

### C. <u>*McGill* Has No Bearing on the Arbitrability of Plaintiffs' Claims</u>

#### 1. Plaintiffs Seek Only Private Injunctive Relief

Plaintiffs contend that the injunctive relief they seek is public, rather than private, because the purportedly unlawful conduct they seek to redress is ongoing. They argue that the "key distinction" between public and private relief is "between redressing past wrongs and stopping an ongoing future harm," and they allege that Speedy Cash "incorrectly characterizes" their claims as requesting relief only for current Speedy Cash customers. (Dkt. 20 at 10.)

Plaintiffs construct an unavailing straw man to avoid Speedy Cash's real argument: Plaintiffs' claims do not seek public relief because they are not outward facing to the general public. As discussed in Speedy Cash's initial brief, California courts define public injunctive relief as having "'the primary purpose and effect'" of prohibiting future injury to the "'general public'" rather than merely a "'group of individuals similarly situated to the plaintiff.'" (Dkt. 18-1 at 8-9 (quoting *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955-57 (2017)).) The only individuals who theoretically would benefit from Plaintiffs' requested relief would be the group of individuals who, like Plaintiffs, execute a contract with Speedy Cash and obtain a loan in excess of $2,500 where the APR exceeds 90%. Such relief is not aimed at

---

[5] Plaintiffs' contention that the Arbitration Provision is unconscionable because Speedy Cash purportedly would have no interest in pursuing the waived right to public injunctive relief fails for the same reasons. (*See* Opp'n at 8-9.) Simply labeling the Arbitration Provision's waiver as rendering the provision "illusory" rather than violating California public policy per *McGill* is unavailing. Either mechanism is preempted by the FAA. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("*Concepcion* teaches that [courts] must be alert to new devices and formulas" that would "reshape traditional individualized arbitration").

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

protecting the general public, and simply because that relief may deter future conduct fails to transform Plaintiffs' private claims into requests for public relief.[6]

The public injunctive relief discussed in *McGill* and the cases cited therein address unlawful practices that target the general public, *e.g.* deceptive advertising and marketing designed to entice the public to purchase a product or service. Despite Plaintiffs' reference to Speedy Cash's advertising of its services, Plaintiffs' First Amended Complaint does not allege that Speedy Cash's advertising to the California general public is deceptive or misleading.[7] Speedy Cash's allegedly unlawful conduct does not reach out to the members of the general public; rather, the only conduct Plaintiffs seek to redress is the interest rates charged to a discrete number of consumers who voluntarily contract with Speedy Cash. Judge Bernal drew this exact distinction in concluding that requested relief was not public where it would benefit "an inherently circumscribed group" of individuals "who enter into contractual relationships" with the defendant, whether previously or in the future, noting that there were no allegations of false advertising to entice the general public into contracting with the defendant. *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 U.S. Dist. LEXIS 167272, at *19-21 (C.D. Cal. Sept. 18, 2018).[8]

Nor can Plaintiffs request the Court to invalidate the Arbitration Provision when they do not seek public injunctive relief. Plaintiffs have nothing to challenge

[6] Plaintiffs' reliance on *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017), is inapposite. The *Davidson* court addressed whether a plaintiff had standing to seek injunctive relief to curb false advertising. The distinction between public and private injunctive relief was not addressed by the court, nor was it at issue in the case.

[7] The interest rate to be charged is plainly disclosed on the first page of the Agreement and is available prior to execution. (Dkt. 18-2, Exs. A and B at 1.) Moreover, Ms. Delisle admits that Speedy Cash's website makes available to California customers the interest rate likely to be charged on a particular loan. (Dkt. 20-1 at ¶ 8, Ex. 1.)

[8] *Compare Vasquez v. Libre by Nexus, Inc.*, 2018 U.S. Dist. LEXIS 214143, at *15-16 (N.D. Cal. Aug. 20, 2018) (proposed injunction seeks public injunctive relief where "targets false and misleading statements in [the defendant]'s marketing materials, disclosures, and contracts, among other things" that enticed members of general public to obtain the defendant's services).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

because the Arbitration Provision does not bar Plaintiffs from pursuing their requested relief. Enforcement of the Arbitration Provision thus would not run contrary to a fundamental California policy. A court does not sift through a contract to locate potentially problematic language that has no bearing on the parties' dispute. Plaintiffs have cited no case law otherwise, and courts regularly hold that *McGill* "does not apply and cannot be the basis for Plaintiffs to evade arbitration" where plaintiffs do not seek public injunctive relief. 2018 U.S. Dist. LEXIS 167272, at *21; *see also* Dkt. 18-1 at 11-12 & n.4. Even so, *McGill* does not apply because Plaintiffs *were* granted the right to pursue a claim for public injunctive relief—in arbitration or in litigation—by rejecting the Arbitration Provision within 30 days. Plaintiffs decided not to do so. (*Id.* at 12-13.)

**2. *McGill* Is Preempted by the FAA**

Finally, Plaintiffs argue that *McGill* is not preempted by the FAA for the reasons discussed in *McGill*.

Although *McGill* ostensibly recognizes a generally applicable contract defense, it indisputably "stand[s] as an obstacle to the accomplishment of the FAA's objectives" in preserving "individualized proceedings[, which] are an inherent and necessary element of arbitration," and its preempted by the FAA. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 343 (2011); *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012). *McGill* itself provides no meaningful analysis otherwise.[9] Nor do Plaintiffs pen a single word in opposition to Speedy Cash's discussion detailing that public injunction proceedings are inconsistent with traditional bilateral arbitration.[10] (Dkt. 18-1 at 14-21.)

[9] As discussed in Speedy Cash's initial brief, *McGill* simply notes without explanation that its rule does not frustrate the objectives of the FAA. (Dkt. 18-1 at 22 n.5.) Moreover, *McGill* focused on the wrong analysis, failing to address whether the forced arbitration of public injunction proceedings would run afoul of the purposes of arbitration, including bilateral arbitration. (*Id.*)

[10] Courts concluding that *McGill* is not preempted have adopted *McGill*'s preemption analysis without much, if any, additional analysis of the issue. The Ninth Circuit Court of Appeals will hear oral argument in several related appeals

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Rather, Plaintiffs rely wholesale on *McGill*'s novel construct of FAA preemption, which purports to exempt state laws that invalidate arbitration agreements because they thwart state substantive remedies—as opposed to procedural rights—from United States Supreme Court precedent requiring that any state law frustrating the objectives of bilateral arbitration yield to the FAA. Citing dicta of *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985), and select phrases of *American Express v. Italian Colors Restaurant*, 570 U.S. 228 (2013), *McGill* and Plaintiffs rely on the "effective vindication" doctrine. They ignore a critical limitation on that doctrine.

"The 'effective vindication' exception, which permits the invalidation of an arbitration agreement when arbitration would prevent the 'effective vindication' of a federal statute, does not extend to state statutes." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 936 (9th Cir. 2013); *see also Coneff*, 673 F.3d at 1159 n.2 (*Mitsubishi* . . . and similar decisions are limited to federal statutory rights."); *Italian Colors* at 233, 35-36. The exception may render a federal right immune to the FAA because the doctrine "serves to harmonize competing *federal* policies by allowing courts to invalidate agreements that prevent the 'effective vindication' of a federal statutory right." *Id.* at 235 (emphasis added). But the doctrine has nothing to do with FAA preemption, which preempts "any state substantive or procedural policies to the contrary." *Concepcion*, 563 U.S. at 346 (citation omitted).[11]

Plaintiffs' reliance on Ninth Circuit case law holding that California law is not preempted by the FAA where it invalidates any agreement that waives claims under the Private Attorneys General Act of 2004 ("PAGA") likewise is inapposite.

---

addressing the issue on February 12, 2019. *See* Notice of Oral Argument, *McArdle v. AT&T Mobility LLC*, No. 17-17246 (9th Cir.), ECF No. 43.

[11] *Accord Italian Colors*, 570 U.S. at 252 (Kagan, J., dissenting) ("When a state rule allegedly conflicts with the FAA, we apply standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives. If the state rule does so . . . the Supremacy Clause requires its invalidation. We have no earthly interest (quite the contrary) in vindicating that law.").

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

*See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015). First, Plaintiffs seek public injunctive relief, which is *not* a PAGA claim brought by Plaintiffs as a proxy for and on behalf of the State. *McGill*, 2 Cal. 5th at 959-61 (claim for public injunctive relief not a "representative" claim).[12] Second, *Sakkab*'s preemption analysis regarding PAGA claims is fundamentally different than the analysis for public injunctive relief claims. The *Sakkab* court analyzed whether the California law ran afoul of the objectives of the FAA and held that the "critically important distinction" between California law's prohibition on PAGA waivers and the class action waiver at issue in *Concepcion* was that PAGA claims do "not diminish parties' freedom to select informal arbitration procedures" because the State is the real party in interest and "there is no need to protect absent employees' due process rights in PAGA arbitrations." *Id.* at 435-36. The court also reasoned that PAGA actions are "not . . . necessarily 'procedurally' complex." *Id.* at 438.

In stark contrast, for the myriad reasons detailed in Speedy Cash's initial brief (and entirely unchallenged by Plaintiffs), a public injunction proceeding is exceptionally complex to arbitrate. (Dkt. 18-1 at 14-21.) It would be a lengthy, expensive, and complicated endeavor that necessitates inquiry into the rights and obligations of many third parties. California law's forced arbitration of claims for public injunctive relief presents significant impediments to bilateral arbitration and clearly runs afoul of the FAA's objectives. Accordingly, the FAA preempts *McGill*, and the Court should enforce the Arbitration Provision.

---

[12] The Arbitration Provision's bar on public injunctive relief is contained in Section 5(E), which provides that neither party has the right to "join or consolidate claim(s) involving you with claims involving any other person." (Dkt. 18-2, Exs. A and B at § 5(E).) "Claim," in turn, is defined as "any claim, dispute or controversy ***between you and us*** (or our related parties) that arises from or relates in any way ***to this Agreement*** or any services you request or we provide ***under this Agreement*** . . . ." (*Id.*, Exs. A at 5 and B at 4 (emphasis added).) Clearly, a claim for broad public injunctive relief would require adjudication of countless agreements Speedy Cash has executed with third parties. Such an adjudication is not confined to the dispute between Plaintiffs and Speedy Cash relating solely to the Agreement.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Dated: January 11, 2019

Paul L. Gale
James B. Manley, Jr.
Lindsey B. Mann
W. Alex Smith
TROUTMAN SANDERS LLP

By: */s/ Paul L. Gale*
Paul L. Gale

Attorneys for Defendant
SPEEDY CASH

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545