1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  | CINDY DELISLE and ROBERT            Case No.:  3:18-CV-2042-GPC-RBB
12  | DOUGHERTY, Individually and On
    | Behalf of All Others Similarly      **ORDER DENYING MOTION TO**
13  | Situated,                           **COMPEL ARBITRATION AND**
                                          **STAY PROCEEDINGS**
14                          Plaintiff,
                                          **[ECF No. 18.]**
15  | v.

16  | SPEEDY CASH,

17                          Defendant.

18

19          On October 16, 2018, Plaintiffs Cindy Delisle and Robert Dougherty ("Plaintiffs")

20  filed a First Amended Complaint alleging a putative class action against Defendant

21  Speedy Cash on behalf of themselves and all others similar situated.  (ECF No. 16.)

22  Plaintiffs assert claims under California's Unfair Competition Law ("UCL") Cal. Bus. &

23  Prof. Code § 17200 *et seq.*, and California's Consumer Legal Remedies Act ("CLRA")

24  Cal. Civ. Code § 1750 *et seq.*  Plaintiffs define the proposed class as:

25          All persons in the State of California who obtained loans in excess of $2,500.00 from
            Defendant Speedy cash within the 48 months preceding the filing of this Complaint,
26          wherein the annual percentage rate (APR) of interest on said loans exceeded 90
            percent.
27

28

1

(ECF No. 16, at 6.)  On October 30, 2018, Speedy Cash moved to compel arbitration and to dismiss this case.  (ECF No. 18.)  On January 4, 2019, Plaintiffs filed a response (ECF No. 20), and on January 11, 2019, Speedy Cash filed a reply (ECF No. 21).

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument, and having considered the parties' arguments, the Court finds and concludes as follows.

## I.   Background

Speedy Cash is a Delaware business with its corporate headquarters in Kansas.  It operates thirty-six locations throughout California, and is licensed by the California Department of Corporations as a California Finance Lender subject to Cal. Fin. Code § 22000.  Speedy Cash offers loans through its physical stores, as well as through online loan portals.    According to Plaintiffs, Speedy Cash conducts comprehensive advertising campaigns in California to generate business for what it characterizes as "Easy, Fast & Friendly Cash Loans."  (ECF No. 16, at 4.)

Both Cindy Delisle and Robert Dougherty are citizens of the state of California.  On July 14, 2018, Ms. Delisle entered into an "Installment Loan and Promissory Note" (the "Loan Agreement," ECF No. 18-3, Ex. A to Decl. of Katrina Anthony) with Speedy Cash, which provided that Speedy Cash would loan $4,457.38 to Ms. Delisle at an Annual Percentage Rate ("APR") of 95.737%.  On October 16, 2017, Mr. Dougherty signed an identical contract with Speedy Cash, under which Speedy Cash agreed to loan him $2,600 at an APR of 135.441%.  The high APRs charged by Speedy Cash meant that Ms. Delisle would be required to repay Speedy Cash a minimum of $15,097.63, and Mr. Dougherty, a minimum of $12,746.78.

The Loan Agreements entered into by Plaintiffs were drafted by Speedy Cash, and both Plaintiffs aver that they were not given an opportunity to negotiate any terms.  The Loan Agreements contain an arbitration provision, which obligated both Speedy Cash and its customer to arbitrate "any claim, dispute or controversy between you and us . . . that

arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement . . . ." (ECF No. 18-3, at 6.)

Under Section 1 of the "Arbitration Provision," the contract provides Plaintiffs a right to reject arbitration, so long as they notify Speedy Cash in writing of their desire to reject the Arbitration Provision within 30 days of signing. (*Id.* ("RIGHT TO REJECT ARBITRATION").) Exercising the opt-out under Section 1 would "not affect [Plaintiffs'] right to Services or the terms of th[e] Agreement (other than th[e] Arbitration Provision)." (*Id.*)

The Arbitration Provision also outlines the claims to be arbitrated (or not.) Relevant here, Section 5, titled "NO CLASS ACTIONS OR SIMILAR PROCEEDINGS; SPECIAL FEATURES OF ARBITRATION," sets out what claims may proceed to arbitration and which claims are waived in any forum. Section 5(C) disallows Plaintiffs to "participate in a class action in court or in arbitration," and Section 5(E) prohibits Plaintiffs from "join[ing] or consolidat[ing] claim(s) involving you with claims involving any other person." (*Id.* at 8.). Section 5(D) disallows Plaintiffs from "act[ing] as a private attorney general in court or in arbitration." (*Id.*)

Section 10, titled "SURVIVAL, SEVERABILITY, PRIMACY," specifies the terms of the Arbitration Provision's survivability. Generally, the Arbitration Provision is severable; if any part thereof "cannot be enforced, the rest of this Arbitration provision will continue to apply. (*Id.*) However, it also contains a provision which Plaintiffs refer to as the poison pill: "if Section 5(C), (D) and/or (E) is declared invalid in a proceeding between you and us, without in any way impairing the right to appeal such decision, this entire Arbitration Provision . . . shall be null and void in such proceeding." (*Id.*) Thus, if any one of Sections 5(C), 5(D), and 5(E) are determined invalid, then neither party would be bound to arbitration. It is undisputed that neither Plaintiff opted out of the Arbitration Provision within 30 days of signing the Loan Agreements.

The instant litigation arises out of Plaintiffs' putative class action suit, articulated in their First Amended Complaint ("FAC"), filed October 16, 2018. (ECF No. 16.) Plaintiffs

3:18-CV-2042-GPC-RBB

allege that Speedy Cash's business model is premised on selling loans with usurious interest rates to people who cannot afford to pay them back. They claim that the APR charged by Speedy Cash is excessive and prohibited by California law, namely, the prohibitions against unfair, unlawful, and deceptive business practices espoused by the UCL and the CLRA. For these wrongs, Plaintiffs seek disgorgement, restitution, punitive damages, reasonable attorney's fees, and a declaration that Speedy Cash is in violation of the UCL and CLRA.

Plaintiffs have also invoked "public injunctive relief" under UCL § 17204, (ECF No. 16, at 14), which allows UCL injunctions under § 17203 to be brought by the attorney general, district attorneys, or by "any person who has suffered injury in fact and has lost money as a result of [] unfair competition." UCL § 17204. The contours of the injunction Plaintiffs seek are as follows: they hope to enjoin Speedy Cash from "entering into loan agreements with an APR in excess of 90%," (ECF No. 16, at 12), "charging an unlawful interest rate on its loans exceeding $2,500," (*id.* at 15), and requiring it to "institute corrective advertising and providing written notice to the public of the unlawfully charged interest rate on prior loans." (*Id.*)

Speedy Cash's motion to compel arbitration insists that Plaintiffs' claims must be resolved in arbitration, and urges the present suit be stayed pending arbitration. (ECF No. 18.) Plaintiffs' opposition counters that the Arbitration Provision is unconscionable and against California public policy. Plaintiffs do not challenge the propriety of the class-action waiver. Indeed, they cannot, since class waiver unconscionability arguments are "now expressly foreclosed by [the Supreme Court's decision in] *Concepcion*." *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052,1058 (9th Cir. 2013) (en banc) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011)). Instead, Plaintiffs contend that waivers of public injunctive relief is invalid under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), and therefore the entire Arbitration Provision must fall pursuant to the poison pill clause. Speedy Cash disputes that *McGill* applies, arguing that Plaintiffs have not made a true

claim for public injunctive relief, and that, in any event, that the Federal Arbitration Act ("FAA") preempts the rule in *McGill*.

## II. Discussion

The FAA applies when arbitration agreements meet two conditions: (1) the agreement is in writing; and (2) the agreement is part of "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Arbitration provisions satisfying these two requirements are "valid, irrevocable, and enforceable" under federal law. *Id.; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000) ("The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,' . . . and permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement.").

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The role of a district court under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130 (citations omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id*. Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Here, it is undisputed that the Arbitration Provision is in writing, is part of a "contract evidencing a transaction involving commerce" within the meaning of the FAA, and encompasses the claims alleged by the Plaintiffs in this action. Plaintiffs resist arbitration only on the first consideration enumerated in *Chiron*—contending that no "valid agreement to arbitrate exists." *Id.* To wit, Plaintiffs allege that the Arbitration

Provision is unenforceable and invalid under California law for being procedurally and substantively unconscionable. The Court notes that the party asserting a state-law defense against arbitration—here, Plaintiffs—bears the burden of proving the defense applies. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

## A. Choice of Law Dispute

At the threshold, the Court notes that the parties dispute whether Kansas's or California's law should govern issues related to contract formation and validity. The choice-of-law issue matters because California law provides heightened protections against unconscionable contracts, whereas Kansas law is less protective. *See Mendoza v. Ad Astra Recovery Servs. Inc.*, No. 2:13-cv-06911-CAS(JCGx) (C.D. Cal. Jan. 6, 2014) (comparing the two jurisdictions' respective laws respecting unconscionability and concluding that California's was "more expansive"). The parties also appear to be in accord that Kansas, unlike California, does not have a *McGill* equivalent rule against waivers of public injunctive relief.

Speedy Cash posits that Kansas law applies because the Arbitration Provision expressly stipulates that Kansas law is to be applied with respect to the enforceability of the Arbitration Provision. (*See* ECF No. 18-3, at 8 ("GOVERNING LAW. . . . the law of Kansas . . . shall be applicable to the extent that any state law is relevant in determining the enforceability of this Arbitration provision under Section 2 of the FAA.")) Plaintiffs argue that California law should be applied under *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992), because California has materially greater interest than Kansas in the enforcement of its more protective laws.

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Mortensen v. Bresnan Comm'cns, LLC*, 722 F.3d 1151, 1161 (9th Cir. 2013). California's choice of law framework is set forth in *Nedlloyd*. Under this approach, "[a]s a threshold matter, a court must determine 'whether the chosen state has a substantial relationship to the parties or their transaction, or . . . whether there is any other reasonable basis for the parties' choice of law.'" *Ruiz v. Affinity Logistics Corp.*, 667

F.3d 1318, 1323 (9th Cir. 2012) (quoting *Nedlloyd*, 3 Cal. 4th at 330). Assuming that one of these conditions is met, *Nedlloyd* then inquires whether applying the chosen state's law would be "contrary to a fundamental policy of California," and if so, "whether California has a materially greater interest than the chosen state in resolution of the issue." *Nedlloyd*, 3 Cal. 4th at 466.

Here, the Court finds that Kansas, as the chosen state, has a substantial relationship to Speedy Cash and that a reasonable basis exists for the parties' choice of law. Speedy Cash maintains its headquarters in Kansas, and Plaintiffs acknowledge that Speedy Cash maintains ten branch offices there. (ECF No. 20, at 9.) That fact is sufficient to sustain the parties' stipulated chosen state for the first part of the *Nedlloyd* analysis. *See e.g. Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1446 (2012) (holding that a Texas choice of law provision could be sustained where defendant corporation had its principal place of business, corporate headquarters, and operating center in Dallas) (citing *In re Comm. Money Ctr., Equip. Lease Litig*, 627 F.Supp.2d 786, 801–02 (applying Nevada law where one of the contracting parties had headquarters in Nevada)).

Next, the Court addresses the second prong of the *Nedlloyd* analysis, i.e., whether Kansas's law is contrary to a fundamental policy of California. Plaintiffs assert California has a material and fundamental interest in maintaining a pathway to public injunctive relief in unfair competition cases, as evinced by UCL section 17204 and as reaffirmed by the California Supreme Court in *McGill*. Speedy Cash does not dispute that California considers the availability of public injunctive relief an issue of fundamental importance; it argues only that *McGill* is inapplicable to this case or preempted on the merits. (ECF No. 18-1, at 13.) Because the parties do not dispute that California has a weighty interest in maintaining the availability public injunctive relief for UCL claims, and because both the Plaintiffs in this case obtained their loans in California and press claims under California consumer protection statutes, the Court determines that California has a materially greater interest than Kansas in employing its laws to resolve the instant dispute.

As such, the Court will apply California law.

**B. The Arbitration Provision is Unconscionable**

In California, "[i]n order to render a contract unenforceable under the doctrine of unconscionability, there must be both a procedural and substantive element of unconscionability." *See Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).  These two elements, however, need not both be present in the same degree.  *See Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981 (9th Cir. 2007). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable." *Armendariz*, 6 P.3d at 690.

Plaintiffs provide two main arguments for why the Arbitration Provision cannot stand.  First, they argue that the Arbitration Provision is procedurally unconscionable. Second, they argue that the waiver of public injunctive relief in Section 5 is substantively unconscionable under *McGill*, which, if true, would nullify the entirety of the Arbitration Provision.  The Court addresses these arguments in turn.

**1. Procedural Unconscionability**

Procedural unconscionability "concerns the manner in which the contract was negotiated and the respective circumstances of the parties at the time." *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999).  At heart is the level of unfair surprise and oppression involved in the agreement.  *See A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).  Surprise "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*  Oppression arises from an inequality which results in no real negotiation and an absence of meaningful choice. *Id.*

Plaintiffs argue that the Loan Agreements were procedurally unconscionable because they were provided to them on a take it or leave it basis, and that they were not

afforded an opportunity to review their terms before signing. Similarly, they contend that because Speedy Cash was the party with the only negotiating power, the Loan Agreements are classic, and unconscionable contracts of adhesion. Speedy Cash argues that there was no procedural unconscionability or unfair surprise because the Arbitration Provision permitted Plaintiffs to opt-out of binding arbitration within 30 days of signing the contract.

> 1. RIGHT TO REJECT ARBITRATION. If you do not want this Arbitration Provision to apply, you may reject it within 30 days after the date of this Agreement by delivering to us . . . a written rejection notice . . . . Your rejection of arbitration will not affect your right to Services or the terms of this Agreement (other than this Arbitration provision).

(ECF No. 18-3, at 7).

It is undisputed that neither Ms. Delisle nor Mr. Dougherty exercised their rights to reject arbitration within the 30 allotted. But that fact alone is not dispositive. Speedy Cash cites *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075–76 (9th Cir. 2013), for the proposition that the 30-day opt-out provision immunizes the Arbitration Provision from a procedural unconscionability challenge. However, as discussed in *Mohammed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211–11 (9th Cir. 2016), opt-out provisions which would require plaintiffs to waive statutory causes of action "before they knew any such claims existed" are unenforceable. *Id.* (holding, in a case involving a waiver of a labor law claim under the Private Attorneys General Act, that although plaintiffs were given an option to opt out within 30 days, that "it is 'contrary to public policy for an employment agreement to eliminate this choice altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises.'") (quoting *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 358, 383 (2014)).

Here, Plaintiffs were required to opt out of arbitration before any dispute existed. The Court finds that there were elements of procedural unconscionability, notwithstanding the 30-day opt out provision.

**C. Substantive Unconscionability**

Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney*, 70 Cal. App. 4th at 1330 (internal quotations and citations omitted). In California, "mandatory waivers of non-waivable statutory rights" are viewed as inherently suspect, since they present "the sort of one-sided and overly-harsh terms that render an arbitration provision substantively unconscionable." *Bridge Fund Capital Corp. v. Fasbucks Franchise Corp.*, 622 F. 3d 996, 1104 (9th Cir. 2010). Because the parties' contentions turn on whether the rule in *McGill*—i.e., that predispute waivers of public injunctive relief is unenforceable as matter of California public policy—is preempted by the FAA, the Court now turns to examine the decision in detail.

### 1. Legal Backdrop

In *McGill*, the California Supreme Court addressed a provision in an arbitration agreement that waived the right to seek "public injunctive relief" for violations of the CLRA, UCL, and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500. The Court determined that California public policy mandated that public injunctions under all three statutes, specifically section 17204 (the public injunctive relief provision of the UCL), and section 17535 (the public injunctive relief provision of the CLRA), were sacrosanct, and not subject to waiver where such waiver would result in a prohibition against seeking public injunctive relief in any forum.

The *McGill* court began by outlining what it meant by public injunctive relief. Public injunctive relief is injunctive relief enabled by statute which "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Id.* at 951. Public injunctive relief by and large benefits the general public and benefits the plaintiff, if at all, only incidentally or as a constituent member of the general public. *Id.* at 955. In contrast, private injunctive relief primarily resolves a private dispute between parties, rectifies individual wrongs, and benefits the public, if at all, only incidentally. *Id.* The court acknowledged that sections 17204 and 17355 expressly enabled qualifying private plaintiffs to file a lawsuit on his or her own behalf seeking "as

one of the requested remedies, injunctive relief 'the primary purpose and effect of' which is 'to prohibit and enjoin conduct that is injurious to the general public.'" *Id.* at 961 (quoting *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1077 (1999)). Accordingly, the court determined that McGill's request for an injunction to prohibit Citibank "from continuing to engage in its allegedly illegal and deceptive practices,"—i.e., the marketing of its 'credit protect' plan and its handling of her claim thereunder—qualified as a claim for public injunctive relief.

The court then considered whether the arbitration clause at issue ran afoul of California public policy because it purported to bar McGill from seeking public injunctive relief in any forum—arbitration or otherwise. The court decided that question in the affirmative in light of California Civil Code section 3513. Section 3513 provides that "[a]ny one may waive the advantage of law intended solely for his benefit[, b]ut a law established for a public reason cannot be contravened by private agreement." CAL. CIV. CODE § 3513. Reasoning that because "the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under [the UCL] would seriously compromise the public purposes [the UCL was] intended to serve,'" the court held that "a waiver of the right to request public injunctive relief in any forum is invalid and unenforceable under California law." *Id.* at 961. Finally, the court held that the rule it announced was not preempted by the FAA.

### 2. The Parties' Arguments

Plaintiffs argue that their claims, which encompass a request for public injunctive relief under UCL section 17204, cannot be subject to waiver under *McGill*. Since Section 5 would purport to waive their public injunctive claims, the offending clauses in Section 5 must be invalidated, and such would trigger the poison pill in Section 10 to render the entirety of the Arbitration Provision null and void. Defendants counter that Plaintiffs only have a claim for private, not public injunctive relief, and that in any event the rule in *McGill* must be invalidated because it is preempted under the FAA as interpreted by the Supreme Court in *Concepcion*.

Resolution of the parties' contentions turns on three issues: first, whether the Arbitration Provision in fact contains a waiver of public injunctive relief; second, whether Plaintiffs' FAC articulates a true prayer for public injunctive relief; and third, whether *McGill* is preempted by the FAA.

### 3. The Arbitration Provision prohibits public injunctive relief in any forum

Plaintiffs locate the waiver of public injunctive relief in Section 5(D). Section 5(D) disallows Plaintiffs from "act[ing] as a private attorney general in court or in arbitration." (ECF No. 18-3, at 8.) Defendants, on the other hand, locate the waiver in Section 5(E), which prohibits Plaintiffs from "join[ing] or consolidat[ing] claim(s) involving you with claims involving any other person." (*Id.*) Regardless of which specific subsection of Section 5 applies, there is no disagreement among the parties that the Arbitration Provision encompasses this dispute and that it prohibits Plaintiffs from seeking public injunctive relief in any forum, arbitral or judicial.[1]

### 4. Plaintiffs' FAC seeks public injunctive relief

Speedy Cash argues *McGill* does not apply because Plaintiffs seek to obtain "public injunctive relief" in name only. Specifically, Defendant contends that Plaintiffs seek *private* injunctive relief, not public injunctive relief. This argument is unwinning, because the relief Plaintiffs seek falls squarely within the ambit of public injunctive relief.

Recall that Plaintiffs' FAC seeks injunctive relief pursuant to the UCL and the CLRA. Specifically, Plaintiffs allege that Speedy Cash continues to engage in a business practice that is ongoing and harmful to the California consumer public, and seek to enjoin Speedy Cash to "immediately cease entering into loan agreements with an APR in excess

---

[1]    Indeed, section 9 confirms that any arbitrator selected under the Arbitration Provision "shall be authorized to award all remedies available in an *individual lawsuit* . . . ." (ECF No. 18-3, at 18 (emphasis added).)

of 90%," (ECF No. 16, at 12), and to "institute corrective advertising and providing written notice to the public of the unlawfully charged rate on prior loans." (*Id.* at 15.) The injunctive relief sought by Plaintiffs is precisely the kind which the California Supreme Court has designated as "public," and therefore not subject to waiver.

As recognized by *McGill*, "public injunctive relief under the UCL [and] the CLRA is relief that has the primary purpose and effect of "prohibiting lawful acts that threaten future injury to the general public." 2 Cal. 5th at 955. Here, it is hard to see how Plaintiffs' requested injunction would benefit them directly, since they have "already been injured, allegedly, by [the Defendant's] practices and is aware of them." *Broughton*, 21 Cal. 4th at 1081 n.5 (considering an injunction sought pursuant to the CLRA). In this case, as was true in *Broughton*, "even if a CLRA plaintiff stands to benefit from an injunction against a deceptive business practice, it appears likely that the benefit would be incidental to the general public benefit of enjoining such a practice." *Id.* If Plaintiffs' injunction is granted, then the public would not be exposed to the high (and allegedly, buried) APR rates offered by Speedy Loan, and would receive the benefit of corrective advertising. Contrary to Speedy Loan's arguments, there would be "real prospective benefit to the public at large from the relief sought." *Kilgore*, 718 F.3d at 1061.

The fact that Plaintiffs would receive incidental benefit from the requested injunction is of no moment. To have standing to raise a claim of public injunctive relief under the UCL in the first place, Plaintiffs are required by statute to have "suffered injury in fact" and "lost money or property as a result of the unfair competition." Section 17204. Thus, it is natural, if not almost inevitable, that a prayer for public injunctive relief under section the UCL would have the ancillary effect of benefiting a UCL plaintiff.

Plaintiffs' FAC seeks public injunctive relief within the definition of *McGill*.

### 5. *McGill* is not preempted by the FAA

Defendants argue that Plaintiffs cannot avail themselves of the rule in *McGill* because *McGill* is preempted by the FAA under *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), because public injunctive relief is hostile to the fundamental attributes of arbitration. Plaintiffs contend that *McGill* is not preempted, largely for the same reasons as stated by the Ninth Circuit in *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015), with respect to waivers of California Private Attorneys General Act ("PAGA") actions, Cal. Lab. Code § 2698 *et seq.*

For the following reasons, the Court holds that *McGill* is not subject to preemption.

### a. FAA Preemption Principles

While "[t]he FAA contains no express preemptive provision," and does not "reflect a congressional intent to occupy the entire field of arbitration," *Volt Info Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989), it does preempt state law "to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The Supreme Court has held that the FAA was enacted in response to counteract "widespread judicial hostility to arbitration agreements," and embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 563 U.S. at 346 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 (1983)). The FAA espouses this principle through Section 2, which provides that "[a] written provision . . . in a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."

At the same time, the final clause of § 2, the FAA's savings clause, "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 349 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). To fall

within the saving clause, the state-law invalidity doctrine must be a "ground[] . . . for the revocation of *any contract*," and "generally applicable," in the sense that the state law must not single out arbitration agreements for unfavorable treatment. *Casarotto*, 517 U.S. at 687. Even if a state-law rule is "generally applicable," it is preempted if it stands as "an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 343.

### b. *McGill*

In *McGill*, the California Supreme Court considered the enforceability of a contractual provision waiving the right to seek public injunctive relief in any forum.

The first part of the opinion held that waivers of public injunctive relief were contrary to California law. *McGill* determined that "[b]y definition, the public injunctive relief available under the UCL, the CLRA, and the false advertising law . . . is primarily 'for the benefit of the general public,'" rather than to resolve private disputes. 2 Cal. 5th at 961. Because allowing waivers of public injunctive relief would indisputably and "seriously compromise the public purposes" that the UCL, CLRA, and false advertising law were enacted to accomplish, *McGill* concluded that any contract purporting to totally foreclose a party's right to such relief—i.e., through a waiver of such claims in both arbitration and in court—would be invalid under California Civil Code § 3513 ("Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."). Thus, *McGill* concluded that predispute contracts purporting to waive the right to seek the statutory remedy of public injunctive relief in any forum are contrary to public policy and thus unenforceable under California law.

In the second part, *McGill* held that the rule it pronounced was not preempted under *Concepcion*. As an initial matter, *McGill* observed that the rule precluding waivers of statutes intended for public benefit—i.e., California Civil Code § 3513—was one of general application and did not derive its meaning from the fact that an agreement to arbitrate is at issue. *Id.* at 962. Thus, because it operated equally in arbitral and judicial

fora, its application to waivers of public injunctive relief fell within the FAA's savings

clause for generally-applicable contract invalidation doctrines. *Id.* at 640. Next, *McGill*

turned to address whether, notwithstanding the "generally applicable" nature of the rule it

announced, it might be preempted under *Concepcion*. It concluded that its rule withstood

*Concepcion* because the FAA preempts only generally-applicable *procedural*

mechanisms, like class actions, at odds with arbitration, but had no effect on

"provision[s] in an arbitration agreement forbidding the assertion of certain statutory

rights." 2 Cal. 5th at 965 (quoting *Am. Express Co. v. Italian Colors Restaurant*, *570

U.S.* 228, 236 (2013)).

    Speedy Cash argues that *McGill*'s preemption analysis is flawed.[2] According to

Speedy Cash, instead of ascertaining whether the arbitration of claims for public

injunctive relief would turn arbitration into the "litigation it was meant to displace," *Epic

Sys. Corp. v. Lewis*, --- U.S. ----, 138 S. Ct. 1612, 1623–24 (2018), *McGill* myopically

focused on an artificial distinction between class actions on the one hand, and claims for

public injunctive relief on the other. (ECF No. 18-1, at 28.) It points out that *McGill*

elided the key inquiries urged by *Concepcion*, i.e., whether a generally-applicable

defense might be preempted because it (1) is "applied in a fashion that disfavors

arbitration" or (2) "interferes with fundamental attributes of arbitration," such as "lower

costs, greater efficiency and speed, and the ability to choose expert adjudicators to

resolve specialized disputes." 563 U.S. at 348. Speedy Cash also contends that the

distinction drawn by *McGill* between impermissible "procedural restrictions" (i.e. no

waiver of class actions) and rules vindicating "substantive statutory remedies" (i.e., no

waivers of public injunctive relief) has no basis in law.

---

[2] Speedy Cash has not challenged the first part of *McGill* which determined that that predispute waivers of public injunctive relief are contrary to California public policy. This is for good reason, as the Court is bound to follow *McGill* on matters of state law. *See McArdle v. AT&T Mobility LLC*, Case No. 09-cv-01117-CW, 2017 WL 4354998, at *1 (N.D. Cal. Oct. 2, 2017) (finding *McGill* dispositive on this question, noting that "[i]n interpreting state law, federal courts are bound by the pronouncements of the state's highest court" (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002)).

Speedy Cash's arguments are well taken. *McGill* does not engage in the kind of in-depth preemption analysis demanded by *Concepcion*. *Cf. Sakkab*, 803 F.3d at 436–37 ("*Concepcion* requires us to examine whether the waived claims mandate procedures that interfere with arbitration, as the class claims in *Concepcion* did."). There is scant discussion in *McGill* whether an anti-waiver rule in the context of public injunctive relief (1) "sacrifices" arbitration's "informality," *Concepcion*, 563 U.S. at 348, (2) "makes the process lower, more costly, and more likely to generate procedural morass than final judgment," *id.*, (3) "*requires* procedural formality" *id.* at 349, or (4) "greatly increases risks to defendants." *Id.* at 350. Nor is *McGill* particularly persuasive at defending its decision to distinguish defenses waiving procedural avenues from defenses arising from substantive law.

### c. *McGill*'s Reception in Federal Court

*McGill*'s s preemption analysis is not binding on federal courts. *See Fardig v. Hobby Lobby Stores Inc.*, No. SACV 14-00561 JVS, 2014 WL 4782618, at *4 (C.D. Cal. Aug. 11, 2014) ("[W]hether or not a California rule is preempted by the FAA is a question of federal law."). However, with one recent exception, all district courts to date have agreed that *McGill*'s anti-waiver rule is not preempted by the FAA. *See, e.g.*, *Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017) (not preempted); *Roberts v. AT&T Mobility LLC*, 2018 WL 131746 (N.D. Cal. 2018); *Dornaus v. Best Buy Co*., No. 18-CV-04085-PJH, 2019 WL 632957, at *4 (N.D. Cal. Feb. 14, 2019) (not preempted); *McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW, 2017 WL 4354998, at *1 (N.D. Cal. Oct. 2, 2017) (not preempted); *cf.*, *McGovern v. U.S. Bank N.A.*, 362 F.Supp.3d 850, 859–864 (S.D. Cal. 2019) (preempted).

Courts siding with *McGill* have taken pains to furnish the *Concepcion* analysis missing in *McGill*. They have generally relied on *Sakkab*, 803 F.3d 425, as a reference point for their preemption analysis. In *Sakkab*, the Ninth Circuit was asked to decide whether the rule in *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014), which invalidated as against public policy waivers of PAGA actions, was subject to

preemption. *Sakkab* examined whether the *Iskanian* rule conflicted with the FAA's purposes, and "whether the waived claims mandate procedures that interfere with arbitration." *Id.* at 436–37. *Sakkab* determined that *Iskanian* was not preempted because arbitrations under PAGA do not by necessity mandate onerous procedures that would interfere with the fundamental attributes of arbitration. *Id.* at 436. Unlike class actions, PAGA does not provide a right for others to join in the action, so there was "no need to protect absent employees' due process rights in PAGA arbitrations," *id.*, and accordingly no cumbersome class action procedures, like notice and certification requirements, which would impede the arbitration of PAGA claims.

Courts that have considerrf claims for public injunctive relief under section 17204 have found them highly similar to PAGA claims for preemption purposes and extended the reasoning in *Sakkab* to *McGill*. *See Dornaus*, 2019 WL 632957, at *5 ("The adjudication of claims seeking public injunctive relief mirrors the *Sakkab* court's analysis of PAGA claims."); *Roberts*, 2018 WL 1317346, at *6 ("If the California state law rule (*Iskanian*) prohibiting waiver of representative PAGA claims (in any forum) does not interfere with the fundamental attributes of arbitration, then it is difficult to see how the California state law rule (*McGill*) prohibiting waiver of public injunctive relief (in any forum) could."); *see McArdle*, 2017 WL 4353998, at *4 (surveying the rationales stated in *Sakkab* and concluding that "[t]he same analysis applies here, with equal force").

There is great similitude between these two types of actions. PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." *Iskanian*, 59 Cal. 4th at 360. An action under PAGA is a type of qui tam action, crafted to remedy the California legislature's perception that "there was a shortage of government resources to pursue enforcement." *Sakkab*, 803 F.3d at 429–30 (quoting *Iskanian*, 59 Cal. 4th at 379, and 2003 Cal. Stat. ch. 906 § 1). Thus, "[t]o compensate for the lack of 'adequate financing of essential labor law enforcement functions,' the legislature enacted the PAGA

to permit aggrieved employees to act as private attorneys general to collect civil penalties." *Id.* at 430.

Public injunctive claims under section 17204, on the other hand, are similarly crafted to vindicate California's interest in enforcing its public policy, i.e., the Unfair Competition Laws. Section 17204 permits requests of injunctive relief under section 17203 to be brought by state authorities (i.e., "the Attorney General or a district attorney or by a county counsel . . .") and provides standing for private individuals who have "suffered injury in fact and lost money or property as a result of the unfair competition." UCL § 17204. "By definition, the public injunctive relief available under the UCL, the CLRA, and the false advertising law . . . is primarily 'for the benefit of the general public.'" *McGill*, 2 Cal. 5th at 961 (citations omitted). Thus, there is a strong argument to be made that public injunctive relief under section 17204, like PAGA claims, "primarily carry a potential remedy that reflects vindication of claims on behalf of the state." *Dornaus*, 2019 WL 632957, at *5. In fact, before a 2004 amendment to the bill added the requirement that private individuals must demonstrate injury-in-fact, section 17204 was commonly described as espousing "private attorney general" claims. *See, e.g.*, *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001 (9th Cir. 2001); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 598 (1998).

As is true of PAGA claims, "[c]laims seeking public injunctive relief do not necessarily require the procedural complexities of class claims," like the ones disapproved of by *Concepcion*. *Id.* "There is no notice to the public, no opportunity for others to join, and no concern for others' due process rights." *Id.*, *cf. Concepcion*, 563 U.S. at 350 (observing in the class action context that "it is . . . odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied"). Because "[t]he issues of class notice and multi-faceted elements which inform class certification particularly under Rule 23(b)(3) do not obtain where a public injunction is sought under 17200," there are no concerns here about forcing the procedures of class actions onto arbitration. *Roberts*, 2018 WL 1317346, at *7.

Because any logic which immunizes a contract defense precluding PAGA waivers from preemption applies with equal force to a rule prohibiting public injunctive relief waivers, most district courts have applied *Sakkab* to the *McGill* rule.

**d. Speedy Cash's preemption arguments are addressed by *Sakkab***

With *Sakkab* on the books, *McGill*'s survival is almost ineluctable; all of the preemption arguments raised by Speedy Cash find some retort in *Sakkab*.

For example, Speedy Cash claims that arbitrating public injunctive claims would sacrifice arbitration's informality and render it akin to a class action which is "slower, more costly, and more likely to generate procedural morass." *Concepcion*, 563 U.S. at 349. It argues that public injunction proceedings may necessitate a sprawling evidentiary inquiry relating to injury for non-parties, and the likelihood of future injury to the public. (ECF No. 18-1, at 24 (citing *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 564 (1995); *Fetelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1012 (2005).)

But as *Sakkab* pointed out in the PAGA context, "the potential complexity of PAGA actions is a direct result of how an employer's liability is measured under the statute . . . . 'potential complexity should not suffice to ward off arbitration' where, as here, the complexity flows from the substance of the claim itself, rather than any procedures required to adjudicate it (as with class actions)." *Sakkab*, 803 F.3d at 438. Moreover, there is no reason to think that public injunctive relief claims categorically implicate massive evidentiary inquiries. Here, the requested injunction is for a cessation of loans extended at a higher than 90% APR, and corrective advertising. Thus, "in the instant case," the public evidentiary inquiry "will likely be particularly straightforward, consisting, *e.g.*, of advertising common to all relevant markets and [] customer agreements common to all relevant markets." *Roberts*, 2018 WL 1317346, at *7. In any event, neither the "*Iskanian* rule prohibiting waiver of representative PAGA claims," nor the *McGill* rule prohibiting waiver of public injunctive relief "diminish parties' freedom to select informal arbitration procedures." *McArdle*, 2017 WL 4354998, at *3 (quoting

*Iskanian*, 59 Cal. 4th at 435). In fact, "nothing 'prevents parties from agreeing to use informal procedures to arbitrate representative PAGA claims,'" *id.*, or public injunctive relief claims.

Speedy Cash also asserts that claims for public injunctive relief interfere with fundamental attributes of arbitration because they "greatly increase[s] risks to defendants." (ECF No. 18-1, at 27.) The idea is that claims for public injunctive relief could fundamentally alter Speedy Cash's core business practices in a way that individual claims would not. The greater risk inheres because "the risk of an error,"—which the defendant might be able to stomach in an individualized arbitral proceeding—"will often become unacceptable" when magnified in a public injunctive relief setting where no judicial review is possible. *Concepcion*, 563 U.S. at 350. However, this argument was also amply rejected in *Sakkab*:

> We acknowledge that the Court in *Concepcion* . . . expressed concern that "class arbitration greatly increases risks to defendants" by aggregating claims and increasing the amount of potential damages. As the Court observed, arbitration is "poorly suited to the higher stakes of class litigation," because it does not provide for judicial review. Although PAGA actions do not aggregate individual claims, they may nonetheless involve high stakes. Defendants may face hefty civil penalties in PAGA actions, and may be unwilling to forego judicial review by arbitrating them. It does not follow, however, that the FAA preempts the *Iskanian* rule just because the amount of civil penalties the PAGA authorizes could make arbitration a less attractive method than litigation for resolving representative PAGA claims. By their nature, some types of claims are better suited to arbitration than others. But the FAA would not preempt a state statutory cause of action that imposed substantial liability merely because the action's high stakes would arguably make it poorly suited to arbitration. Nor, we think, would the FAA require courts to enforce a provision limiting a party's liability in such an action, even if that provision appeared in an arbitration agreement. The FAA contemplates that parties may simply agree ex ante to litigate high-stakes claims if they find arbitration's informal procedures unsuitable. By the same token, the FAA does not require courts to enforce agreements to waive the right to bring representative PAGA actions just because the amount of penalties an aggrieved employee is authorized to recover for the state makes the formal procedures of litigation more attractive than arbitration's informal procedures. Just as the high stakes involved in antitrust actions may cause parties to agree ex ante to exclude

antitrust claims from arbitration, parties may prefer to litigate representative PAGA claims.

*Sakkab*, 803 F.3d at 437–38.

Speedy Cash's attempt to distinguish PAGA actions from public injunctive relief under section 17204 is also unavailing. Speedy Cash insists that *Sakkab* was uniquely predicated on the fact that "there is no need to protect absent employee's due process rights in PAGA arbitrations." 803 F.3d at 435–36. But, as other courts have held, there is little difference between PAGA and public injunctive relief in this regard; neither is subject to the "procedural morass" which clings to Rule 23. *Concepcion*, 563 U.S. at 349. If anything, PAGA actions bear a stronger similarity to class actions than public injunctive relief; they are representative actions wherein "third parties are affected as they may be bound by a PAGA judgment." *Roberts*, 2018 WL 1317346, at *6. In contrast, despite the intended public impact of public injunctive relief, litigants under section 17204 "fil[e] the lawsuit or action on his or her own behalf, not 'on behalf of the general public.'" *McGill*, 2 Cal. 5th at 959.

As the foregoing demonstrates, *Sakkab* effectively controls the instant dispute over waivers of public injunctive relief. Accordingly, the Court will follow the path charted by its sister courts and conclude that *McGill is* not preempted under *Concepcion*.[3]

---

[3] The Court pauses briefly to address *McGovern*, 362 F.Supp.3d 850, which was decided after briefing was complete in this case. In *McGovern*, the court held that *McGill* was incompatible with the FAA's objectives. The Court opined that the *McGill* rule is merely the latest "device or formula" intended to frustrate the parties' agreement to the individualized nature of arbitration proceedings, one of its key "fundamental attributes." *Epic Sys.*, 138 S. Ct. at 1623. According to *McGovern*, there is little daylight between class action waivers and waivers of public injunctive relief, since public injunctive relief would apply to a wide swath of individuals, and is "by definition, unnecessary to make a plaintiff whole in an individual arbitration." *McGovern*, 362 F.Supp.3d at 863. "*McGill*," the court opines, "merely attempts to circumvent *Concepcion*'s holding that class action waivers in arbitration agreements can be enforced by giving individuals the unwaivable right to seek wide-ranging injunctive relief not specific to their individual injuries without following the procedural requirements for a class action." *Id.*

*McGovern*, however, does not adequately address binding Ninth Circuit authority, namely, *Sakkab*. Instead, it admits in a footnote that its application of *Epic Systems* to *McGill* is "difficult to reconcile" with *Sakkab*. *Id.* at 850 n.5. The sole rationale *McGovern* cited for discounting *Sakkab* was

### 4. The Public Injunctive Relief waivers are not severable

As discussed *supra*, the parties agree that the Arbitration Provision—either under Section 5(E) or Section 5(D)—waives public injunctive relief under UCL section 17204. Given that the Arbitration Provision contains invalid terms under *McGill*, the Court turns to their effect on the enforceability thereof. "The procedure to be followed here is dictated . . . by the specific procedures contracted to by the parties in the arbitration agreement at issue here." *McArdle*, 2017 WL 4354998, at *4.

Pursuant to the Arbitration Provision, "if Section 5(C), (D) and/or (E) is declared invalid in a proceeding between you and us, without in any way impairing the right to appeal such decision, this entire Arbitration Provision . . . shall be null and void in such proceeding." Thus, given the invalidity of Section 5(E) and 5(D), the Arbitration Provision is rendered wholly nugatory, and Speedy Cash has no grounds upon which to compel arbitration or stay the case. *See McArdle*, 2017 WL 4354998, at *4 (holding that similar "poison pill" language left "no room for doubt" that the entirety of the arbitration provision would be invalidated).

## III.  Conclusion

For the foregoing reasons, Speedy Cash's motion to compel arbitration and to stay proceedings is **DENIED**.  (ECF No. 18.)

_____

the fact that *Epic Systems* reversed a Ninth Circuit opinion which had "us[ed] reason similar to . . . (and even cit[ed]) *Sakkab*." *Id.*  In the underlying decision, *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), the Ninth Circuit held that concerted action waivers violate the National Labor Relations Act, and any rule invalidating the same would not be subject to preemption.  The Supreme Court disagreed in *Epic Systems*, holding that by "attacking (only) the individualized nature of the arbitration proceedings, the employees' argument seeks to interfere with one of arbitration's fundamental attributes." *Epic Sys.*, 138 S. Ct. at 1622.

Whatever its deficiencies, *Sakkab* is still good law and involves a waiver that is much more analogous than that considered in *Epic Systems*.  Even if Speedy Cash were to assert that the Ninth Circuit made the wrong decision in *Sakkab*, there is no authority for this Court to simply ignore it. Indeed, the Supreme Court has been asked to weigh in on whether the FAA preempts *Iskanian* on many occasions; each time it denied certiorari.  *See, e.g.*, *Prudential Overall Supply v. Betancourt*, 138 S. Ct. 566 (2017); *Bloomingdale's Inc.v. Tanguilig*, 138 S. Ct. 356 (2017); *Bloomindale's, Inc. v. Vitolo*, 137 S. Ct. 2267 (2017); *CarMax AutoSuperstores Cal., LLC v. Areso*, 136 S.Ct. 689 (2015).

**IT IS SO ORDERED.**

Dated:  June 10, 2019

Hon. Gonzalo P. Curiel
United States District Judge