UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY DELISLE and ROBERT DOUGHERTY, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>SPEEDY CASH,<br><br>         Defendant. | Case No.:  3:18-cv-02042-GPC-RBB<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS UPON REMAND**<br><br>**[ECF Nos. 18, 62, 63]** |

On July 24, 2020, the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") vacated the Court's Order Denying Defendant's Motion to Compel Arbitration and Stay Proceedings ("Order"), ECF No. 23, and remanded for the limited purpose of considering what effect, if any, California Financial Code Section 22304.5(a) has on the Court's public injunctive relief analysis.  ECF No. 62.  Parties filed supplemental briefs, along with an evidentiary objection and response.  ECF Nos. 63, 65–68.  A hearing was held on the matter on October 16, 2020.  ECF No. 73.

Having considered all related documents and the applicable law, the Court once again **DENIES** Speedy Cash's Motion to Compel Arbitration and Stay Proceedings, and

finds that the enactment of Section 22304.5 does not deny Plaintiffs' standing to seek public injunctive relief.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Loan Agreements and Complaint

Defendant Speedy Cash offers loans through its physical stores and online loan portals. According to Plaintiffs, Speedy Cash conducts comprehensive advertising campaigns in California to generate business for what it characterizes as "Easy, Fast & Friendly Cash Loans." First Am. Compl. ("FAC"), ECF No. 16, ¶ 20.

Plaintiffs Cindy Delisle and Robert Dougherty entered into loan agreements with Speedy Cash ("Loan Agreements"). Exs. A and B to Decl. of Katrina Anthony, ECF No. 18-3 at 1–17.[1] Specifically, on July 14, 2018, Ms. Delisle entered into an "Installment Loan and Promissory Note" with Defendant, which provided that Defendant would loan $4457.38 to Ms. Delisle at an Annual Percentage Rate ("APR") of 95.737%. On October 16, 2017, Mr. Dougherty signed a similar contract with Speedy Cash, under which Speedy Cash agreed to loan him $2600 at an APR of 135.441%. The high APRs charged meant that Ms. Delisle would be required to repay Defendant a minimum of $15,097.63, and Mr. Dougherty, a minimum of $12,746.78. FAC, ECF No. 16, ¶¶ 22–23.

The Loan Agreements contain an "Arbitration Provision," which obligated both Speedy Cash and its customer to arbitrate "any claim, dispute or controversy between you and us . . . that arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement . . . ." *E.g.*, Ex. A to Decl. of Katrina Anthony, ECF No. 18-3 at 6. Section 5 of the Arbitration Provision sets out which claims are waived in any forum. Specific to the matter at-issue, Section 5(D) disallows

---

[1] References to specific page numbers in a document filed in this case correspond to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

Plaintiffs from "act[ing] as a private attorney general in court or in arbitration," and Section 5(E) prohibits Plaintiffs from "join[ing] or consolidate[ing] claims involving you with claims involving any other person." *Id.* at 8. Section 10 discusses the Arbitration Provision's survivability. Generally, the Arbitration Provision is survivable. However, it also contains a "poison pill" which provides: "if Section 5(C), (D) and/or (E) is declared invalid in a proceeding between you and us, without in any way impairing the right to appeal such decision, this entire Arbitration Provision . . . shall be null and void in such proceeding." *Id.*

### B. The First Amended Complaint

The FAC in this putative class action suit was filed on October 16, 2018. ECF No. 16. Plaintiffs assert that Speedy Cash's lending practices violate California Financial Code Section 22303 and/or California Civil Code 1670.5, because class members were induced to take out loans of $2,500 or above with unconscionable interest rates (of 90% or higher), and with unfair, unlawful, and objectively oppressive terms. Specifically, Defendant allegedly locks consumers into loans that they cannot afford to repay, *id.* ¶ 15, and once they default, Defendant compounds its exorbitant profits by adding interest and penalties and thereafter employs aggressive collection efforts, *id.* ¶ 18. The FAC claims that the loan terms are so onerous that they are beyond the reasonable ability of the consumer to repay the amount borrowed. *Id.* ¶ 26.

Plaintiffs further allege that they did not understand the terms of the promissory note and disclosure statement, *id.* ¶ 28, because Speedy Cash presented the loan terms rapidly without any actual or reasonable opportunity for review, *id.* ¶ 27. In addition, disclosure documents were not provided until final signing and a reasonable consumer would not understand the interest and penalty provisions due to the deceptive and rapid manner that Speedy Cash presented the information as to disguise the terms of the Loans. *Id.* ¶¶ 27, 28. Finally, the Promissory Note and disclosure statements presented to

Plaintiffs and the members of the class were presented on a "take it or leave it" basis. *Id.* ¶ 24.

With respect to the interest rate, Plaintiffs allege that Speedy Cash's business model is premised on selling loans with usurious interest rates that people cannot afford to pay back. *Id.* ¶ 15. Plaintiffs claim that the APR charged by Defendant is excessive and prohibited by California law, namely, the prohibitions against unfair, unlawful, and deceptive business practices espoused by California's Unfair Competition Law ("UCL") and California's Consumer Legal Remedies Act ("CLRA"). *Id.* ¶¶ 41, 50, 66. For these wrongs, Plaintiffs seek disgorgement, restitution, punitive damages, reasonable attorney's fees, and a declaration that Speedy Cash is in violation of UCL and CLRA. *Id.* at 14–15.

Finally, Plaintiffs, in the role as a Private Attorney General under Section 17204 of UCL, seek public injunctive relief "permanently and immediately prohibiting Defendant Speedy Cash from engaging in the unlawful conduct alleged herein, including but not limited to the inclusion in its loan agreements any provision having the effect of imposing an APR of over 90% on loans of more than $2,500." *Id.* Plaintiffs also request injunctive relief requiring Defendant to "institute corrective advertising and provid[e] written notice to the public of the unlawfully charged interest rate on prior loans." *Id*. at 15.

### C.     Motion to Compel Arbitration

On October 30, 2018, Speedy Cash moved to compel arbitration and stay the proceedings, including discovery, pending arbitration. ECF No. 18. The parties briefed the Court on the motion. ECF Nos. 20, 21. Plaintiffs argued that the arbitration provisions in the loan agreements are unconscionable and against California public policy. They contended that waivers of public injunctive relief are invalid under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), and therefore the entire Arbitration Provision falls pursuant to the poison pill clause. Defendant disputed that *McGill* applies, arguing

that Plaintiffs had not made a true claim for public injunctive relief, and that, in any event, the Federal Arbitration Act preempts the rule in *McGill*.

On June 10, 2019, the Court issued its Order denying Speedy Cash's motion. First, the Court found that California law governs the issues related to contract formation and validity. ECF No. 23 at 6–8. Next, the Court determined that the Arbitration Provision is unconscionable under California law, both procedurally and substantively. *Id.* at 8–22. Of note, in determining that the Arbitration Provision was substantively unconscionable, the Court concluded: (1) the Arbitration Provision contained a waiver of public injunctive relief; (2) Plaintiffs' FAC articulated a true prayer for public injunctive relief; and (3) *McGill* is not preempted by the Federal Arbitration Act. *Id.* at 12–22. Lastly, since the Arbitration Provision contains terms that the Court found to be invalid, the Court held that the poison pill provision invalidated the entire Arbitration Provision. *Id.* at 23.

### D. Defendant's Appeal and California Financial Code Section 22304.5

Speedy Cash appealed the Order to the Ninth Circuit and filed a Notice of Appeal on July 9, 2019. ECF No. 31. During pendency of the appeal, newly enacted California Financial Code Section 22304.5 became effective on January 1, 2020. Section 22304.5 generally states that for any loan of at least $2,500 but less than $10,000, a finance lender may not charge an interest rate of 36% plus the Federal Funds Rate (rate published by the Board of Governors of the Federal Reserve System in the preceding month). *See* Cal. Fin. Code § 22304.5(a), (b).

Speedy Cash flagged this new law in its Ninth Circuit reply brief. It argued that, since the new law expressly prohibits Speedy Cash from issuing loans between $2,500 and $10,000 with interest rates over 36% (plus the Federal Funds Rate), Plaintiffs' request to enjoin Speedy Cash from issuing loans for amounts over $2,500 with interest rates exceeding 90% would not proscribe conduct that threatens future injury. Thus, according to Speedy Cash, Plaintiffs do not seek public injunctive relief, which must

have "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at 955 (internal quotations and citation omitted).

### E. Ninth Circuit Mandate and Subsequent Procedural History

On June 9, 2020, the Ninth Circuit issued a Memorandum vacating and remanding the Order (to which the related Mandate was filed on July 24, 2020). ECF No. 62. The Memorandum agreed with the Order "[b]ased on the record and law as it stood at the time." *Id.* at 3. The Ninth Circuit agreed that California law should apply, and that the Federal Arbitration Act does not preempt the *McGill* rule. *Id.* at 5–7.

However, the Ninth Circuit remanded the Order "for the limited purpose" of considering "what effect, if any, California Financial Code § 22304.5(a) has on [the Court's] analysis." *Id.* at 5. According to the Memorandum, whether Plaintiffs' requested injunction would prevent a threat of future harm—a requirement for public injunctive relief—became "questionable" with the new law. While Plaintiffs, as pleaded, seek to enjoin Speedy Cash from issuing loans above $10,000, neither of the named Plaintiffs executed loans greater than $10,000, and the FAC does not specifically allege Speedy Cash's issuance of loans greater than $10,000. *See id.* at 4–5.

The Ninth Circuit stated that the new law "possibly impacts the analysis." *Id.* at 5. It clarified, should the Court conclude that California Financial Code § 22304.5(a) has no effect or impact on the Court's analysis, *McGill* would void the Arbitration Provision's public injunction waiver, which in turn would invalidate the entire Arbitration Provision per the poison pill clause. *Id.* at 5 n.1.

Upon remand, parties filed supplemental briefs to the Court. ECF Nos. 63, 65, 66. Plaintiffs also filed an evidentiary objection ("Objection") to Speedy Cash's Reply Brief, which made a factual claim that "Speedy Cash does not issue loans in California over

$10,000" and cited its own webpage to support the claim. ECF No. 67. Speedy Cash filed a Response to the Objection. ECF No. 68.

A hearing on the supplemental briefs was held on October 16, 2020. At the hearing, the Court granted Plaintiffs the option of filing a second amended complaint to account for the change in the law. Plaintiffs notified the Court on October 22, 2020 that they elected to not file a second amended complaint, and to submit on the supplemental motion papers already filed. ECF No. 74.

## II. DISCUSSION ON REMAND

Pursuant to the Ninth Circuit's remand of "limited purpose," this Court must consider "what effect, if any, California Financial Code § 22304.5(a) has on its analysis." ECF No. 62 at 5, 5 n.1. Specifically, the Court must consider whether Plaintiffs have standing to seek public injunctive relief where loans between $2,500 and $10,000 can no longer bear unconscionably high interest rates.

For reasons discussed below, the Court concludes that the passage of California Financial Code Section 22304.5(a) affects the court's analysis but not the Court's conclusion on the motion. This is because Plaintiffs' FAC challenges a range of business practices that go beyond what is proscribed by Section 22304.5 (that is, the charging of unconscionably high interest loans for loans between $2,500 and $10,000). Specifically, Section 22304.5 does not address the additional unconscionable business practices raised in Plaintiffs' FAC, which include: (1) presenting the loan terms to consumers without any actual or reasonable opportunity for review; (2) locking consumers into loans that they could not afford to repay which resulted in consumers falling into default; and (3) employing aggressive collection tactics. Consequently, Plaintiffs have preserved their Article III standing to proceed with the lawsuit because Defendant allegedly continues to employ deceptive and unconscionable practices in extending loans of more than $2,500.

However, Section 22304.5 does affect the Court's analysis as to the claim relating to unconscionable interest rates on loans from $2,500 to $10,000. The request for injunctive relief on this part of the case is moot by the new law since there is little, if any, likelihood that Defendant will continue to charge interest rates exceeding 90% on future loans between $2,500 and $10,000. As to loans in excess of $10,000, the FAC alleges generally that the putative class is made up of consumers who obtained loans in excess of $2,500 but does not specifically allege that Defendant extends loans in excess of $10,000. Following remand, the Court provided Plaintiffs an opportunity to amend their FAC and the Plaintiffs did not avail themselves of that opportunity. As a result, the FAC does not specifically allege that Speedy Cash issues loans in amounts exceeding $10,000. Given the conclusion that the FAC seeks injunctive relief as to unconscionable business practices not covered by Section 22304.5, the Court finds that it is unnecessary to determine whether Plaintiffs have standing to represent consumers who obtained loans in excess of $10,000.[2]

### A.  Nature of Plaintiffs' Allegation

Plaintiffs primarily challenge Speedy Cash's high interest rates. *See, e.g.*, FAC, ECF No. 16, ¶¶ 1, 2, 14, 15 (seeking to protect the California public "from the threat of future injury in terms of an excessive interest rate"). The FAC explicitly requests enjoining "loan agreements with an APR in excess of 90%," or at least "imposing an APR of over 90% on loans of more than $2,500." *Id.* at 12, 15.

But, Plaintiffs also allege that Speedy Cash engages in unconscionable practices when issuing the loans. The "pernicious" loan terms and disclosure statements were presented "rapidly without any actual or reasonable opportunity for review." *Id.* ¶¶ 17,

---

[2] Relatedly, the Court also will not rule on Plaintiffs' Objection and Defendant's Response, ECF No. 67, 68, because it makes no difference in the Court's analysis.

1 27. In fact, the promissory notes and disclosure documents were only provided upon final signing. *Id.* ¶ 27. Plaintiffs allege that a reasonable person would not understand the implications of the loans due to the "deceptive and rapid manner" Speedy Cash presented the information, which was "intended to disguise the terms of the Loans." *Id.* ¶¶ 27, 28. And once consumers eventually defaulted because they were locked into loans designed to fail, Defendant would add default interest and penalties, in addition to "aggressive" collection efforts. *Id.* ¶¶ 15, 18. Accordingly, Plaintiffs seek public injunctive relief that prohibits Defendant "from engaging in the unlawful conduct alleged herein," *id.* at 14, and directs it to "institute corrective advertising and provid[e] written notice to the public of the unlawfully charged interest rate on prior loans," *id.* at 15.

Thus, Plaintiffs' request for public injunctive relief goes beyond what Section 22304.5 proscribes. Specifically, Section 22304.5 does not prohibit deceptive, unconscionable practices in issuing loans, such as inadequate opportunities for a reasonable person to understand the implications of the loans, and aggressive debt collection tactics. And the FAC, as it is written, seeks to prohibit such practices.

**B. Mootness**

Because the challenged business practice of engaging in unfair and deceptive loan practices could continue despite enactment of Section 22304.5 and because granting Plaintiffs' requested remedy can stop such practice, the need for public injunctive relief is not moot. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotations and citation omitted). If "changes can still be made to help alleviate any adverse effects," the issue is not moot. *Tyler v. Cuomo*, 236 F.3d 1124, 1137 (9th Cir. 2000).

"The burden of demonstrating mootness 'is a heavy one.'" *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted). "The 'heavy burden of persua[ding]'

the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (alteration in original) (citation omitted). In the case before the Court, the "challenged conduct" is the practice of high interest loans *and* "pernicious conduct in its lending and loan practices." FAC, ECF No.16, ¶ 33.C. Just because one manifestation or subset of the practice is no longer possible does not mean that the unaffected and remaining illegal practices will not continue.

Here, completely aside from high interest rates, Speedy Cash may continue to extend loans under financial terms that cannot be met while depriving its consumers of a meaningful opportunity to understand what they are signing up for, followed by late fees, penalties, and aggressive debt collection efforts upon their default.

Defendant argues in its Supplemental Brief, ECF No. 63 at 14, that the "new statutory enactment has removed the basis or need for relief" because "[t]here can be no real expectation that the alleged wrongs will recur now that the people of the state have prohibited them." *Smith v. Univ. of Washington, Law Sch.*, 233 F.3d 1188, 1195 (9th Cir. 2000). But as discussed previously, no part of the new law prevents the allegedly unfair and deceptive practices engaged in by Speedy Cash. Consequently, the Court finds there is live case and controversy beyond what the new statute has addressed and resolved. *Cf. id.* at 1193 (discussing that there is no case or controversy "if it turns out that resolution of the issue presented cannot really affect the plaintiff's rights," and that no real relief can be provided "once the statute and its aftermath had accomplished all that a judgment could accomplish").

### C. Public Injunctive Relief

As discussed in the previous Order, ECF No. 23 at 13, "public injunctive relief under the UCL, [and] the CLRA . . . is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public." *McGill v.*

*Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (citing *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1077 (1999)).

Defendant argues that Plaintiffs' requested relief would not prohibit conduct that threatens future harm to the public because an intervening change in law proscribes the Defendant's challenged conduct. *See* Def.'s Supp. Br., ECF No. 63 at 12–14. Speedy Cash relies on *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 105, 1061 (9th Cir. 2013), to argue that a request to enjoin future conduct is not enough to establish public injunctive relief when a plaintiff does not allege that the defendant is engaging in that conduct.[3] *See* Def.'s Reply Br., ECF No. 66 at 8. Indeed, *Kilgore* concluded that the injunctive relief sought only concerned past harms (and thus was private in nature) because the complaint "expressly notes that [defendant] had completely withdrawn from the private school loan business and does not allege that the [defendant] is engaging in other comparable transactions." 718 F.3d at 1061.

In the instant case, there is a threat of future injury to the general public by the business practice of unreasonable loan issuance/collection tactics. Unlike in the cases cited by Defendant, *see Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 753–55 (2019), *review denied* (Nov. 13, 2019); *M Resorts, Ltd. v. New Eng. Life Ins. Co.*, No. 19-cv-1545-WQH-AGH, 2019 U.S. Dist. LEXIS 216053, at *12 to *15 (S.D. Cal. Dec. 16, 2019); *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477 JGB (SPx), 2018 U.S. Dist. LEXIS 167272, at *18 (C.D. Cal. Sep. 18, 2018), the potential beneficiaries of

---

[3] Defendant is correct that Plaintiffs' request to "institute corrective advertising and provid[e] written notice to the public of the unlawfully charged interest rate on *prior* loans," FAC, ECF No. 16 at 15 (emphasis added), would not qualify for public injunctive relief due to reasons discussed in *Kilgore*. However, the plain language of the FAC requests more than that. *See, e.g.*, *id.* at 14 ("prohibiting Defendant Speedy Cash from engaging in the unlawful conduct alleged herein").

11

the injunction are more than just the Plaintiffs and similarly situated people, and the requested relief is more than correcting a past harm. Here, if the requested injunction is issued, future Speedy Cash consumers would benefit. Defendant will be required to engage in due diligence in determining whether a consumer can afford the loan payments on any loan of more than $2,500 and will be precluded from issuing loans to individuals who do not have the ability to pay. Defendant will also be precluded from presenting consumers promissory note terms and disclosure statements immediately before the final signing on loans over $2,500 without any actual or reasonable opportunity for review.

In fact, the new Section 22304.5 makes the Plaintiffs' case stronger. The named Plaintiffs will not be the ones benefiting from an injunction that enjoins the illegal business practices that are not covered by the new law. *Cf. Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1080 n.5 (1999) (discussing how the requested injunction "will obviously not benefit [plaintiffs] directly, since they have already been injured, allegedly, by [defendant's] practices and are aware of them").

### D. Standing

For Article III standing, there must be injury-in-fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Citizen suit provisions—such as those provided by UCL and CLRA, *see* Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780—may create "procedural injury," but a concrete injury-in-fact must still exist. *Lujan*, 504 U.S. at 571–78; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548–49 (2016), *as revised* (May 24, 2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Plaintiffs advance an unfair competition claim under UCL. The claim is premised on unlawful business conduct, which Section 17200 of UCL proscribes. Cal. Bus. & Prof. Code § 17200. By prohibiting unlawful business practices, "'section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the unfair

competition law makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). The California Financial Code, Section 22302(b) may "suppl[y] the requisite 'violations of other laws' by making '[a] loan found to be unconscionable' a violation of the California Financing Law." *De La Torre v. CashCall*, Inc., 5 Cal. 5th 966, 980 (2018) (second alteration in original).

UCL grants standing to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. For UCL standing, "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). Similarly, CLRA's standing provision states: "Any consumer who suffers any damage as a result of . . . practice declared to be unlawful by Section 1770 may bring an action . . . ." Cal. Civ. Code § 1780(a); *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (discussing how the illegal action must cause the harm). Here, Plaintiffs allege in part that Speedy Cash's unconscionable business practices incurred them financial injury, so the requirements for standing (based on procedural injury as established by UCL and CLRA) are met.

According to Defendant, Plaintiffs have failed to demonstrate that Speedy Cash's conduct caused an injury subject to injunctive relief given the change in law. The new statutory regime creates two loan products that are distinct and affect the causation analysis, Def.'s Suppl. Br., ECF No. 63 at 17, and Plaintiffs do not allege that Defendant issues the loans they seek to enjoin, Def.'s Reply Br., ECF No. 66 at 8. Speedy Cash's argument proceeds as follows: (1) Activity X, allegedly illegal, has caused the injury under the FAC; (2) the new law now divides X into Y and Z, which are governed by

different legal regimes and thus must be considered different activities; (3) the FAC only alleges that Y caused the injury and Y is now proscribed by the new law.  As a result, the FAC fails to establish causation for Z because Plaintiffs were not harmed by the conduct that makes up Z (i.e. unconscionable interest rates on loans of more than $10,000).

However, Plaintiffs do not limit their challenge to Speedy Cash's practices of charging interest rates above 90%.  As the Court has noted, the new law does not change the way these loans may be extended or presented to the consumer when signing the loan agreement, nor does the new law change how the loans may be collected.  Ultimately, the court's "responsibility to guard against consumer loan provisions with unduly oppressive terms" stays the same.  *See De La Torre*, 5 Cal. 5th at 973.  The new law does not affect the chain of causation because Section 22304.5 does not prohibit all forms of alleged deception and default interest and penalties—unconscionable practices that are alleged to have harmed Plaintiffs.  *See, e.g.*, FAC, ECF No. 16, ¶¶ 45–48, 50, 68–70.  Accordingly, Defendant's arguments on high interest loans of $10,000 being a new, distinct loan product has no bearing on the Court's standing analysis and thus the Court need not address it.

## III.   CONCLUSION

For reasons discussed above, the Court has concluded that the newly effective Section 22304.5 has not altered the Court's conclusion.  Plaintiffs' FAC still seeks public injunctive relief.

As discussed in the Ninth Circuit Memorandum, if the Court's analysis stays the same despite the new law, "*McGill* [*v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)] voids the loan agreement's waiver clause, which, in turn, invalidates the arbitration provision in full." ECF No. 62 at 5 n.1.  Further, the Federal Arbitration Act does not preempt *McGill*. *Id.* at 5–6.

Since the Arbitration Provision is invalidated in its entirety,[4] Speedy Cash's Motion to Compel Arbitration and to Stay Proceedings, ECF No. 18, is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 20, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[4] Because the Court denies Defendant's Motion due to the Arbitration Provision unconscionably waiving a public injunctive relief that was actually requested, the Court will not address Plaintiffs' argument that the Arbitration Provision is void regardless, Pls.' Opp'n Br., ECF No. 65 at 24–29, and Defendant's Reply to it, ECF No. 66 at 12–15. In any case, the Court was directed to conduct a "limited" analysis on remand and must not overstep the terms of the Mandate.